18032

JOHNSON COTTON COMPANY, Inc., Respondent, v. Wallace
CANNON and L. L. Cannon, Appellants

(129 S. E. (2d) 750)

44

*Messrs. Stevens & Holt,* of Loris, *for appellants,*

*Messrs. McCaskill & Thompson,* of Conway, *for Respondent,*

February 18, 1963.

Moss, Justice.

Johnston Cotton Company, Inc., the respondent herein, on June 22, 1960, sold and delivered to Wallace Cannon and L. L. Cannon, the appellants herein, a complete irrigation system, consisting of one motor, a pump, and irrigation pipe with fittings and risers, at the price of $3,795.60. The appellants, on July 28, 1960, executed to Johnston Cotton Company, Inc., Dunn, North Carolina, their conditional sales contract wherein and whereby they promised to pay the total purchase price in three consecutive annual installments of $1,265.20 each, commencing September 15, 1960. The conditional sales agreement contained a provision that the entire debt would become due and payable upon default in the payment of any installment. The foregoing conditional sales contract was, for value received, duly assigned and trans-

ferred to the respondent herein by Johnson Cotton Company, Inc., Dunn, North Carolina.

The appellants failed to pay the annual installment due on September 15, 1960, and the respondent, on January 2, 1961, repossessed the complete irrigation system and sold the same at public auction on January 20, 1961, for the sum of $2,500.00. The respondent became the purchaser at such sale and credited the $2,500.00 upon the conditional sales contract.

The respondent instituted this action on March 20, 1961, against the appellants, asking for a deficiency judgment in the amount of $1,223.78, this being the difference between the contract price for the irrigation system and the amount credited upon the debt by reason of the sale of such system at public auction. The appellants, by answer, set forth (1) a general denial; (2) that the respondent warranted the irrigation system to be in good workable order in all respects and that there was a breach of such warranty because of the defective condition of the said equipment and, as a result thereof, the appellants were never able to operate and use such equipment; and (3) that the irrigation system, at the time of its repossession, was reasonably worth the original agreed purchase price.

This case came on for trial before the Honorable Claude M. Epps, Judge of the Civil Court of Horry County, and a jury. At the close of all the testimony, the motion of the respondent for a directed verdict was granted upon the ground that the appellants had waived their right to rely upon a breach of warranty. This appeal followed.

The first question for determination is whether the Trial Judge committed error in directing a verdict for the respondent on the ground that the appellants had waived their right to rely upon a breach of warranty by acceptance of the irrigation system and executing the conditional sales contract one month and six days after the delivery of said system with knowledge of its defective condition.

This question must be considered in the light of the rule that if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but is one of law for the Court. However, if more than one reasonable inference can be drawn from the evidence the case must be submitted to the jury. *Fuller v. Bailey*, 237 S. C. 573, 118 S. E. (2d) 340.

It is the contention of the appellants that the irrigation system was not as warranted and because of the defective condition thereof they were never able to use the equipment. The testimony of Wallace Cannon, one of the appellants, with reference to the condition of the irrigation equipment, at the time of delivery or before the execution of the conditional sales contract was, in part, as follows:

"Q. When was the first time you saw the unit?

"A. When they delivered it.

"Q. What did Jack Skipper tell you relative to the unit as its being used or new?

"A. He said it was a new unit with a used pump.

"Q. When he brought it there what was the condition of the unit?

"A. They cranked it and it run good for a few minutes and it got hot and the oil went to running out the side of the block.

\* \* \*

"Q. Now, what happened after that?

"A. Well, they had already set up the pipes and cranked it up and they left and it ran about 30 minutes and then it cut off."

This same witness testified that when the unit would not operate that he called an agent of the respondent and he came back to the farm and "he blowed the lines out and got it running and he was not out of sight when it cut off again." He further testified that the respondent was again contacted and further repairs were made upon the irrigation unit and it was put back into operation and when asked as to how

long it ran the witness answered, "just a little bit and cut off." He further testified as to the defective condition as follows:

"Q. When did they bring it?

"A. About a week later when they came and set it up.

"Q. And you looked at it that time?

"A. Yes, sir.

"Q. And you say it was rusty?

"A. Yes, sir.

"Q. And it had no grill?

"A. That's right.

"Q. And the carriage it was on was rusty?

"A. Yes, sir, but, well, it was angle iron and it will rust quick.

"Q. And you say oil ran out the side of the motor?

"A. Yes.

"Q. And it was so hot the gas was boiling?

"A. Yes, sir.

"Q. And you knew right away that it wasn't new?

"A. Yes.

"Q. And you told them you wanted a new one?

"A. Yes, sir.

"Q. And you knew it wasn't new?

"A. And I told them.

"Q. You got a glance at it and you could tell it wasn't new?

"A. Yes, sir.

"Q. Are you sure that there was no question about the fact that is was not new and the first time you looked at it you knew it?

"A. That's right."

Benny Cannon, a brother of the appellant, Wallace Cannon, testified as to the defective condition of the irrigation unit and confirmed the testimony of his brother as to such defects. This was also true of the testimony of James Cannon, a cousin of Wallace Cannon. L. L. Cannon, one of the appellants, testified that he had heard the other witnesses testify

as to the defective condition of the irrigation system and that he could add nothing to the testimony of such witnesses. However, he did confirm their testimony as to the defective condition. All of the testimony in behalf of the appellants was that they knew of the defective condition of the irrigation equipment immediately following its delivery and within not more than one week after such delivery.

It is undisputed that thirty-six days after the delivery of the irrigation equipment that the appellants executed the conditional sales contract hereinbefore referred to and agreed therein that "The above note is given for part of the purchase price of the merchandise above described, delivery of which has been accepted and condition approved by buyer * * *."

We think that the only reasonable inference that can be drawn from the foregoing testimony is that the appellants observed and knew on the day of the delivery of the irrigation system, or within a few days thereafter, that the same was defective and could not be operated for the purpose of irrigating their tobacco crop, yet they not only executed the conditional sales contract thirty-six days later but in said contract accepted delivery and approved the condition of the equipment.

It is well settled that where the defect or inferiority of the equipment is obvious, or may be discovered, by reasonable inspection or examination before acceptance, the purchasers, by accepting the equipment, waived the right to allege any inferiority of quality which was obvious to them. *Reliance Varnish Co. v. Mullins Lumber Co.,* 213 S. C. 84, 48 S. E. (2d) 653; *Monroe v. Wood,* 186 S. C. 507, 197 S. E. 39; and the cases therein cited.

In the case of *Sullivan v. Huff,* 24 S. C. 348, it was held that where parties purchase machinery at public auction, and, after full opportunity to examine the property and after an inspection thereof, complete their purchase by executing their bond and mortgage, they cannot afterwards resist foreclosure upon the ground of failure of consideration nor invoke the principle that a sound price warrants a sound commodity.

In the case of *Rouse Hempstone & Co. v. Sarratt,* 74 S. C. 575, 54 S. E. 757, it appears that goods were sold and delivered in November 1904, and thereafter in January 1905, the defendants executed notes for the amount of the purchase price and when sued upon such notes the Court held that it was too late to complain of the quality of the goods. It was further held that the defendants waived the alleged defects by executing the notes.

We conclude that the Trial Judge was correct in holding that the appellants, as a matter of law, by accepting the irrigation equipment in a defective condition and executing the conditional sales contract, after such knowledge, waived the defense of breach of warranty.

We have held that a conditional sales contract is in legal effect a chattel mortgage. When a chattel mortgage becomes past due one of the remedies available to the mortgage is that he may peaceably take possession of the chattel, advertise and sell it and apply the proceeds of sale to his secured debt, paying the surplus, if any, to the mortgagor. *Speizman v. Guill,* 202 S. C. 498, 25 S. E. (2d) 731. If there is a deficiency after the application of the proceeds of sale to the debt an action may be maintained against the mortgagor for the deficiency. *Universal C. I. T. Credit Corp. v. Platt,* 239 S. C. 103, 121 S. E. (2d) 351.

Where a mortgagee of personal property takes possession thereof, and converts it to his own use, without a sale, or where a sale is made neither in accordance with the terms of the statute nor in accordance with the wishes and consent of the mortgagor expressed in writing, he thereby waives all claim for any deficiency, and can maintain no personal action against the mortgagor based upon the mortgage debt. *Fowler v. Goldsmith,* 131 S. C. 119, 126 S. E. 431, and *National Exchange Bank v. Holman,* 31 S. C. 161, 9 S. E. 824. It is the contention of the appellants that the respondent took possession of the mortgaged property and that the sale of the same at public auction on

January 20, 1961, was not in accordance with the terms of Section 45-164 of the 1952 Code of Laws. The appellants assert that the sale of the mortgaged property on January 20, 1961 was not a "public sale" as contemplated by the foregoing statute because notice thereof was not given "at least fifteen days before such sale." It is the position of the appellants that since the sale was not made in accordance with the terms of the statute, for the reasons above stated, the respondent waived its claim for any deficiency judgment against them. They charge error on the part of the Trial Judge in not so holding.

The record shows that the respondent repossessed the irrigation equipment on January 2, 1961, because of failure of the appellants to make the annual installment payment due on September 15, 1960. It appears that the respondent, on January 6, 1961, advertised the time and place of the sale of the irrigation equipment by posting a notice thereof, in writing, in three public places in Horry County, one of which was at the courthouse, and the time of the sale as fixed in such notice was January 20, 1961. It is undisputed that a copy of said notice was mailed to each of the appellants and that they were advised of the day that the irrigation equipment would be sold and that if the property did not bring the amount of the mortgage debt they would be responsible for any deficiency.

Wallace Cannon, one of the appellants, testified with reference to such notice of sale, as follows:

"Q. Did you know when it was going to be sold?
"A. Yes, sir.
"Q. How did you know?
"A. I got a letter.
"Q. And you didn't bother to go to the sale?
"A. No.
"Q. You could have gone?
"A. I could have.
"Q. Did you get a notice after the sale telling how much it brought?

"A. Yes.

"Q. How did you get that?

"A. By mail.

"Q. From Mr. Lee?

"A. Yes.

"Q. Did he tell you how much he was looking for for the balance?

"A. Yes.

"Q. Did you go talk to him about it?

"A. No, sir.

"Q. Did you go after the sale?

"A. No, sir.

"Q. You didn't bother to go to the sale or after the sale?

"A. No, sir.

"Q. And you knew it was going to be sold?

"A. Yes, sir."

The appellants contend that the sale of the mortgaged ■ property was not a "public sale" as contemplated by Section 45-164 of the Code. A "public sale" is one made at auction to the highest bidder and at which all persons have the right to come in and bid. It must be held in a public place, upon proper notice, so that the public is given full opportunity to bid upon a competitive basis for the property placed on sale. *Ex parte Keller,* 185 S. C. 283, 194 S. E. 15, and 4 A. L. R. (2d) 575. Certainly, the posting of a notice in three public places, as required by statute, giving the time and place of such sale and inviting the public to participate in said sale constituted such a "public sale". Whether timely notice of such sale was given will be hereinafter discussed.

The conditional sales contract here involved provided that upon the failure of the appellants to pay the installments specified therein, when due, that the respondent could take possession of the chattels described therein and "may dispose of said property at public or private sale, with or without notice, and the buyer agrees to pay any deficiency which may result."

Section 45-164 of the Code prescribes the manner of advertising sale by the mortgagee of personal property under mortgage but expressly provides that the mortgagor may consent, in writing, "to a sale in some other mode or at some other notice." The appellants complain of the insufficiency of the notice of sale, asserting that it did not give "at least fifteen days" notice prior thereto. Certainly, the requirement of the giving of the notice of sale was for the benefit of the appellants. They had the right to waive such a requirement either by express words or by acts equivalent thereto. If they did so waive the notice required by law they cannot now complain. Here the property was sold on January 20, 1961, in accordance with a notice given on January 6, 1961. The appellants not only had the posted notice of sale but they had written notice in the form of a letter of the time and place of said sale and were advised that if the property did not bring the amount of the mortgage debt they would be responsible for any deficiency. It is undisputed that the appellants could have attended the sale if they had so desired and they offer no excuse or reason for their failure so to do. Hence, the fact that the posted notice of the sale was not given at least fifteen days before such sale did not result in any prejudice to the appellants.

Upon the evidence, which has been sufficiently stated, the Trial Judge concluded that the sale was a valid one. He stated, "It is shown by the testimony that it was sold after due advertisement and that the defendants received notice of the sale and did not see fit to attend it or make any attempt to protect any rights they might have as to their equity and they are bound as a matter of law."

The case of *Bulldog Concrete Forms Sales Corp. v. Taylor,* 7 Cir., 195 F. (2d) 417, 49 A. L. R. (2d) 1, was one for the recovery of a deficiency judgment against the conditional vendees by the sellers upon the repossession and resale of the goods. The defendants asserted as a defense defects in the notices and conduct of the sale of the repossessed property. The Court, in rejecting such defense, said:

"The defendants nowhere in their brief point to any prejudice to them from any of the alleged defects in the notices or in the conduct of the sale. Taylor admitted receipt of the notices to the defendants. He did not claim to have been confused by any of the 'defects' in the notices now alleged by the defendants. Taylor admitted that he could have attended the sale but that he did not. In the notices published and posted and in the conduct of the resale there was at least substantial compliance with the various applicable provisions of the Indiana Conditional Sales Act. In the absence of a showing of prejudice the defendants cannot be heard to complain."

The respondent posted notice of the sale on January 6, 1961, and the same was held on January 20, 1961, which is fifteen days if the day of posting is counted. However, in computing the notice period, it is usually done by excluding the first day of which the notice is given and including the last or sale day. Section 10-1301 of the Code. This being true, the public sale of the chattels was held after at least fourteen days posted notice thereof being given. Since the sale was fairly made, and in the absence of any prejudice being shown to the appellants, should the sale be invalidated because only fourteen days notice of the sale was given prior thereto?

The case of *Darnall & Susong v. Darlington,* 28 S. C. 255, 5 S. E. 620, was one in which the plaintiff sought to recover the balance due on a note after crediting thereon the proceeds derived from the sale of the mortgaged property. The chattel mortgage provided that upon default that the mortgagee could take possession of the mortgaged property and sell same "after giving notice by advertisement, by posting notice fifteen days at Allendale Post Office." Plaintiffs took possession of the mortgaged property and the defendant telegraphed them "[t]ake stock to Savannah and sell there". The chattels were accordingly taken to Savannah and after being advertised for two days in a daily paper of that city were sold at public auction and the proceeds of sale, after

deducting expenses, were credited on the note. The defendant, in his answer, claimed that the property not having been sold in accordance with the stipulation of the mortgage nor in accordance with the statute, the debt was paid and satisfied. This Court held, upon an appeal by the defendant, that the mortgagee was entitled to recover the deficiency because the telegram constituted the consent expressed in writing provided for in the statute, especially in the absence of any evidence of any want of fairness in the sale or any evidence that the property brought less than its market value. The Court held that by the aforesaid telegram consent was given to a sale at a different place and upon advertising of less than fifteen days.

In *Ex parte Alexander,* 35 S. C. 409, 14 S. E. 854, the Court said:

"* * * Now, it is only necessary to refer to the case of *Maddox v. Sullivan,* 2 Rich. Eq. [4] 7, and the cases there cited, to show that the failure of the sheriff to comply strictly with the statutory regulations prescribing the time and mode of advertising property offered for sale under execution is a mere irregularity and does not vitiate the sale. Upon this principle, the fact that the sale now under consideration was advertised for only nineteen or twenty days, and not for the full period of 21 days, was a mere irregularity which does not vitiate the sale."

The case of *National Exchange Bank v. Holman,* 31 S. C. 161, 9 S. E. 824, was an action to recover the balance due on a note secured by a chattel mortgage after seizure and sale of the mortgaged chattels. It was the contention of the defendant that the mortgaged chattels were seized in Barnwell County and were taken to Aiken County and there sold at auction after notice and advertisement. It is asserted that this was in violation of the statute. This Court held that since no injury resulted from the sale being made at Aiken instead of in Barnwell County the plaintiff should not be precluded from recovering the remainder of its debt after

crediting the proceeds of sale of the mortgaged property. We quote from the case the following:

"* * * The question is not whether the statutory regulations should be conformed to as law, but whether in character they are so exclusive as that technical non-conformity in a single particular must operate as a discharge of the whole debt. The object being to secure a fair sale and application of the proceeds, it would seem that the error complained of was not of the essence but merely the manner of the thing."

Under Section 45-164 of the Code there is no requirement that the notice of sale of personal property be personally given to the maker of the mortgage or conditional sales contract. However, the appellants had notice of the intended sale of the mortgaged chattels. They made no objection to the sale nor did they voice any opposition to the time of the sale or the manner in which notice thereof was given. If the respondent had not given notice to the appellants of the time and place of sale, we would have no hesitation in holding that a deviation from the terms of the statute would invalidate the attempted sale pursuant thereto, because the deviation, however slight, would be a warrant for other and greater departures from the definite and exact requirements of the statute. Here, the appellants had actual notice that the sale of the mortgaged chattels was to take place without compliance with the exact requirements of the statute. Since there has been no showing of prejudice to the appellants they cannot now be heard to complain of a mere irregularity when such did not affect the fairness of the sale. We think the conduct of the appellants, under the evidence in this record, waived any possible insufficiency of the notice of sale. The Trial Judge was correct in so holding as a matter of law.

The exceptions of the appellants are overruled and the judgment of the Court below is affirmed.

Affirmed.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.