Juan P. RANGEL, Appellant,

v.

BOCK MOTOR CO., Appellee.

No. 11648.

Court of Civil Appeals of Texas.

Austin.

Jan. 15, 1969.

Rehearing Denied Feb. 5, 1969.

Benjamin Shefman and John L. Starcke, New Braunfels, for appellant.

Borchers & Borchers, William H. Borchers, New Braunfels, Sawtelle, Goode, Troilo, Davidson & Leighton, John W. Davidson, San Antonio, for appellee.

PHILLIPS, Chief Justice.

Appellee, the plaintiff below, brought this suit to collect on the unpaid balance due it under an installment contract executed by appellant, the defendant below, for the purchase of a new Ford automobile.

Appellant answered by pleading cancellation of the contract and filed a cross action for restitution of his down payment and monthly installments that he had paid on the theory that the automobile was worthless and, in the alternative, for damages in conversion.

The case was tried to the court sitting without a jury and judgment was entered that appellee recover from appellant the deficiency of $903.41 plus attorney's fees. Appellant has perfected his appeal to this Court.

We affirm.

At the request of the appellant, appellee specially ordered a new 1967 Galaxie XL 2-door hardtop Ford automobile which was delivered to appellant by appellee around the 17th or 18th of October, 1966. To finance the purchase of the car, appellant executed a Texas Automobile Retail Contract dated October 18, 1966 with appellee under the terms of which appellant paid $400.00 down in cash and agreed to make 36 monthly payments of $110.68 commenc-

ing November 16, 1966. Appellee sold or assigned the Retail Installment Contract to Ford Motor Credit Company on October 20, 1967 with recourse. On October 15, 1966, the new Ford automobile in question was inspected by appellee and given a checkup prior to delivery to appellant. On November 18, 1966, the automobile in question was serviced by appellee on complaint by appellant of an engine miss. At that time the speedometer reading on the car was 1,367 miles. The next service on the car was January 9, 1967 when appellee changed the oil and oil filter. Mileage on the automobile at that time was 4,790 miles. The next service on the automobile by appellee was March 22, 1967, at which time upon complaint by appellant of a rough engine idle, the left cylinder head was removed and the number 8 cylinder valves ground. Mileage on the automobile at that time was 8,126 miles.

On or about April 6, 1967, appellant walked into appellee's place of business where the automobile in question had remained since the last service and announced he did not want the automobile any more. Appellee's employees urged appellant to ride in the car since the last service to determine if appellant wasn't satisfied with its performance, but appellant absolutely refused and walked out of appellee's place of business. Appellant abandoned possession of the automobile. On and after April 6, 1967, appellant refused to pay the unpaid balance of $3,403.41 due under the Retail Installment Contract.

Under the repurchase agreement pertaining to the Retail Installment Contract, appellee repurchased the contract from Ford Motor Credit Company for the unpaid balance due of $3,403.41. On April 17, 1967, appellee's attorney wrote appellant sending him a copy of the Notice of Sale and advising him that the automobile would be sold at public sale on the courthouse steps at 2:00 p.m. on April 28, 1967 to the highest bidder for cash, and if the automobile was sold for less than the unpaid balance

due and owing on the Retail Installment Contract, that appellant would be asked to pay the deficiency, plus costs, expenses and attorney's fees. Appellee's attorney also posted notices of the sale in three public places. Then the attorney conducted the public sale at the time and place set forth in the Notice in actual view of the automobile and sold the automobile to appellee at the high bid price of $2,500.00. The $2,500.00 bid of appellee was the wholesale market value of the automobile at the time of the sale.

Appellant is before this Court on five points of error, the first three, briefed together, being that of the court in not finding that the dominion, control and possession of the car, by appellee, Bock Motor Company, after appellant returned the vehicle coupled with the affidavit of repossession and the assignment of ownership of title, without notice to appellant by Ford Motor Credit Company, constituted a conversion of the automobile; in not finding that the dominion, control and possession of the car by Bock Motor Company, as agent for Ford Motor Credit Company, coupled with the affidavit of repossession and the assignment of the ownership of title, without notice to appellant by Ford Motor Credit Company constituted a non-judicial foreclosure; in not finding that by virtue of the non-judicial foreclosure executed by Ford Motor Credit Company, without notice to appellant, or by the conversion that the equitable and legal title merged and extinguished the debt due by appellant.

We overrule these points.

■ Appellant contends that the Ford Motor Credit Company conducted a private sale, when after they had custody, control and possession of the car, together with assignment of title to the Bock Motor Co. along with a declaration of a license receipt as owner and received $3,403.41, in return from the Bock Motor Company; that this constituted a non-judicial foreclosure or amounted to a conversion of the automobile.

We do not agree.

Upon appellant's default, the Retail Installment Contract was repurchased by appellee, not the automobile in question. The transaction was governed by the Texas Business & Commerce Code Annotated, Section 9.504(e) in Vol. 3 at page 458 which reads as follows:

"(e) A person who is liable to a secured party under a guaranty, indorsement, *repurchase agreement* or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. *Such a transfer of collateral is not a sale or disposition of the collateral under this chapter.*" (emphasis supplied)

Appellee was in the position of a person who is liable to a secured party under a repurchase agreement. The secured party was the Ford Motor Credit Company. The collateral was the automobile in controversy. The statute thus specifically provides that the repurchase of the contract was not a sale of the automobile; that appellee succeeded to all the rights and duties of the Ford Motor Credit Company.

The above section was considered in "Default Proceedings" under the Texas Uniform Commercial Code, 44 Tex.L.Rev. 702 (March, 1966). At page 709:

"There is no sale or disposition of the collateral under these provisions when a party other than a debtor who is liable to the secured party takes a transfer or is subrogated to the rights of the secured party. For example, in the common situation where the automobile dealer has agreed with the finance company that it will repurchase certain paper after the default of the prospective purchaser, a transfer of the *paper, or of the repossessed automobile by the finance company to the dealer pursuant to their agreement, will not be a disposition of collateral* under the provisions of the Code and the dealer will still have to comply with the provisions of Part 5 of article 9." (emphasis supplied)

As the repurchase of the Retail Installment Contract by appellee did not constitute by operation of law a sale of the automobile and Ford Motor Credit Company did not actually sell the automobile in question there was no non-judicial foreclosure upon the automobile by Ford Motor Credit Company as asserted by appellant.

Appellant next contends that Ford Motor Credit Company converted the automobile in question. Appellant contends that Ford Motor Credit Company converted the automobile by signing an Affidavit for Repossessed Automobile by making a Title Assignment on the back of the original Certificate of Title and by being listed as owner on a Texas Passenger Car Receipt. Appellant argues that he received no notice of these actions and that the filling out of these forms as "owner" by Ford Motor Credit Company constituted such an exercise of dominion, control and possession of the car as to constitute a conversion.

As stated above, a Certificate of Title was never issued showing Ford Motor Credit Company or appellee as owner of the automobile in question. In executing the affidavit, title assignment and car receipt, Ford Motor Credit Company was following the procedure necessary to show the Motor Vehicle Registration Division of the Texas Highway Department of the repurchase of the contract. It did not have to foreclose the lien itself in view of the dealer's agreement to repurchase. If it had signed the "Release of Lien" section on the back of the Original Certificate, appellant could have demanded an Original Certificate free and clear of all liens.

Under the definition of "owner" in Article 1436–1, Vernon's Ann.P.C., Ford Motor Credit Company could transfer the lien without extinguishing it by making the title assignment. Appellant having defaulted, Ford Motor Credit Company, as a lienholder, was an "owner" for these proce-

dural purposes of title assignment under the definition of that term in Article 1436–1, V.A.P.C., Section 4 (Texas Certificate of Title Act) which reads as follows:

"Sec. 4. The term 'Owner' includes any person, firm, association, or corporation other than a manufacturer, importer, distributor, or dealer claiming title to, *or having a right to operate pursuant to a lien on a motor vehicle after the first sale* as herein defined, except the Federal Government and any of its agencies, and the State of Texas and any governmental subdivision or agency thereof not required by law to register or license motor vehicles owned or used thereby in this State." (emphasis supplied)

Ford Motor Credit Company was also authorized to execute the Affidavit for Repossessed Automobile. Section 35 of Article 1436–1, V.A.P.C., reads in part as follows:

"Whenever the ownership of a motor vehicle registered or licensed within this State is transferred by operation of law, as upon * * * any other involuntary divestiture of ownership, the Department shall issue a new certificate of title upon being provided with * * * bill of sale from the officer making the judicial sale, except however, that where foreclosure is had under the terms of a lien, *the affidavit of the person, firm, association, or corporation or authorized agent, of the fact of repossession and divestiture of title in accordance with the terms of the lien,* shall be sufficient to authorize the issuance of a new certificate of title in the name of the purchaser at such sale * * *." (emphasis supplied)

Since Ford Motor Credit Company was the lienholder of record on the Certificate of Title, it could effectually advise the Highway Department by affidavit of the repossession. Neither was the designating of Ford Motor Credit Company as the owner on the Texas Passenger Car Receipt, such dominion, possession and control as to constitute a conversion. The Motor Vehicle Registration Act which is art. 6675a–1, Tex.Rev.Civ.Stat.Ann., defines an owner for purposes of the Motor Vehicle Registration Act as follows:

"'Owner' means any person who holds the legal title of a vehicle *or who has the legal right of possession thereof, or the legal right of control of said vehicle.*" (emphasis supplied)

Again, a lienholder may be an "owner" for purposes of vehicle registration. Although possession of the automobile was actually at the appellee's place of business, Ford Motor Credit Company had the legal right of possession under its lien and the fact it was listed as owner on the license receipt does not mean it held legal title to the vehicle or was claiming same. At the time of appellant's default there were no current license tags on the automobile and tags had to be procured. The receipts follow the chain of the affidavit and lien assignment.

Appellant's points of error four and five, briefed together, are that of the court in not finding that the consideration for which appellant executed the note and conditional sales contract to appellee for the purchase of the new automobile failed; in not finding that the appellee had breached the express warranty and implied warranty of merchantability and fitness for use created by the sale of the new automobile to appellant, thereby entitling appellant to cancellation of the note, contract and indebtedness and the return of all payments made thereunder.

We overrule these points.

The court found that there were no latent defects in the automobile in question at the time of its purchase from appellee to appellant. All service work performed by appellee on the automobile in question was performed in a skillful and workmanlike manner. Neither Ford Motor Credit Company nor appellee, its officers, employees, or agents, misrepresented or withheld any facts to appellant pertaining to the automo-

**334**

bile in question. All representations of appellee to appellant as to the merchantability of the automobile were substantially correct. Appellee fulfilled all duties imposed by the warranty on the automobile in question. The automobile in question while under the ownership and custody of appellant was serviced only three times by appellee in which time appellant put more than 8,000 miles on the automobile. At the time appellant abandoned the automobile, it was free from any defects or performance problems. The subsequent purchasers of the automobile have had no performance problems or trouble of any kind with the automobile in question.

There was ample evidence to support these findings.

The judgment of the trial court is affirmed.