DOROTHY HYLER SHIELDS, ON BEHALF OF HERSELF AND ALL OTHER PERSONS SIMILARLY SITUATED v. BOBBY MURRAY CHEVROLET, INC.

No. 7910DC54

(Filed 8 January 1980)

**Uniform Commercial Code § 46— sale of repossessed automobile—dealer's repurchase agreement—transfer of title to dealer—valid public sale—no duty to account for surplus on resale**

    A lender conducted a valid public sale of a repossessed automobile pursuant to a purchase money security agreement where the lender duly sent notice to plaintiff debtor concerning the sale; the sale was held at the advertised time; no third persons bid at the sale; and the lender, pursuant to a guaranty and repurchase agreement with defendant automobile dealer, treated defendant dealer as having placed a bid in the amount due under the debtor's contract and transferred title of the automobile to defendant dealer for such amount. Therefore, the transaction did not constitute a mere transfer of collateral under G.S. 25-9-504(5) and defendant dealer had no obligation to account

to plaintiff debtor for any surplus proceeds received through its subsequent resale of the automobile.

Judge MARTIN (Robert M.) dissenting.

APPEAL by plaintiff from *Barnette, Judge.* Judgment entered as amended 3 October 1978 in District Court, WAKE County. Heard in the Court of Appeals 24 September 1979.

The undisputed facts are as follows: On 3 July 1975, plaintiff, Dorothy Hyler Shields, purchased a 1973 Ford automobile from defendant and executed a purchase money security agreement for an amount financed of $1,744.80, having made a down payment of $1,500. Defendant assigned its security interest to First Citizens Bank and Trust Company (First Citizens). At all times relevant to this appeal, defendant and First Citizens were operating under a Retail Protection Agreement for Automobile Dealers (repurchase agreement), which provided that if a buyer defaulted on a contract, First Citizens had the right to repossess the automobile, return it to defendant, and receive from the defendant the balance owed under the contract at that time.

Pursuant to the purchase money security agreement, plaintiff made payments to First Citizens totaling $789.84 but subsequently defaulted in her payment obligations. On 6 July 1976, First Citizens repossessed the automobile and on 7 July 1976, by certified mail, sent to plaintiff at the address at which repossession had been effected a notice of sale of collateral, advertising a public sale of the repossessed automobile at 12:00 noon on 19 July 1976 at the Wake County Courthouse. In addition, notice of sale was posted by First Citizens at the Wake County Courthouse door and two other places. The notice by certified mail was returned to First Citizens by the United States Post Office with notations of notice on 8 July, 13 July and 23 July and marked "Unclaimed".

On 19 July 1976, First Citizens held a sale as advertised. There being no bidders at the sale, First Citizens transferred title to the vehicle to defendant and received $1,255.39, the balance due upon default. Defendant thereafter made certain repairs to the automobile totaling $294.57 and eventually sold the automobile to P & S Auto Service (P & S) for $1,550 after incurring a salesman's commission expense of $100.

Plaintiff filed this action, individually and as representative of a class, on 8 July 1977 seeking recovery of amounts she alleged reflected surplus proceeds received by defendant from its sale of the automobile to P & S. Plaintiff also sought treble damages under G.S. 75-1.1 due to defendant's allegedly unfair and deceptive trade practices in concealing the surplus and not returning the funds to her. Plaintiff further alleged her entitlement to damages under G.S. 25-9-507(1) due to defendant's failure to give notice of its sale of the automobile to P & S.

Defendant filed a motion for summary judgment on 18 August 1978. The trial court granted defendant's motion, based on findings of fact which, in pertinent part, follow:

"20. On July 19, 1976, the sale advertised was held by the Bank and no third persons bid; at such sales the Bank, because of the Retail Protection Agreement, treats the dealer as having placed a bid in the amount due upon the contract; the fact that the Bank transferred title to the automobile to Defendant through the N.C. Department of Motor Vehicles, rather than merely reassigning the Purchase Money Security Agreement to Defendant bears out the fact the Bank treated Defendant as having placed a bid in the amount of the balance due. Defendant paid the Bank the balance due of $1,255.39 and the Bank transferred title to Defendant as a purchase[r] at the sale . . .

21. There is no evidence that the sale held on July 19, 1978, was not a public sale and that any person could have entered a bid on the automobile for more than the balance due."

The court concluded that First Citizens held a valid public sale of the automobile, complying with the provisions of both the security agreement and G.S. 25-9-504(3) in that First Citizens sent reasonable notification of the time and place of the sale to plaintiff.

From the court's dismissal by summary judgment of plaintiff's action with prejudice and the class action without prejudice, plaintiff appeals.

*Wake-Johnston-Harnett Legal Services, Inc., by Leonard G. Green and Marcia L. Stein, for plaintiff appellant.*

*Gulley, Barrow & Boxley, by Jack P. Gulley, for defendant appellee.*

MORRIS, Chief Judge.

This appeal concerns the effect of a guaranty and repurchase agreement on a secured party's right to dispose of collateral upon default under Article 9, Chapter 25 of the North Carolina General Statutes.

G.S. 25-9-503 provides that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." Under G.S. 25-9-504, "[a] secured party after default may sell, lease, or otherwise dispose of any or all of the collateral. . . ." Furthermore, "[d]isposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts." G.S. 25-9-504(3). Such disposition operates to transfer to a purchaser for value "all of the debtor's rights therein". G.S. 25-9-504(4). Upon the sale of collateral subject to an Article 9 security interest, "the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." G.S. 25-9-502(2). Under G.S. 25-9-504(5), there is excluded from the above stated provisions transfers that are mere assignments of collateral, as opposed to private or public sales under G.S. 25-9-504(3). G.S. 25-9-504(5), relied upon by plaintiff in this action, provides as follows:

> "(5) A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this article."

Plaintiff argues that the transactions resulting in defendant's ownership and possession of the repossessed automobile do not constitute a "public sale" in that G.S. 25-9-504(5) specifically excludes from that concept transfers of collateral pursuant to a repurchase or guaranty agreement. Defendant, on the other hand, argues that the sale by First Citizens was a valid public sale

because the repurchase agreement treats the dealer as having placed a bid in the amount due under the contract, and that all the requirements for a public sale were fulfilled.

It is our opinion that First Citizens conducted a valid public sale when it held its auction and subsequently transferred the automobile to defendant. "A 'public sale' is one made at auction to the highest bidder and at which all persons have a right to come in and bid. It must be held in a public place, upon proper notice, so that the public is given full opportunity to bid upon a competitive basis for the property placed on sale." *Johnson Cotton Co. v. Cannon*, 242 S.C. 42, 51, 129 S.E. 2d 750, 755 (1963). *See generally* 77 C.J.S. Sales § 1(d) (1952). The key element, then, in a public sale is the opportunity for competitive bidding. *See* 7 C.J.S. *Auctions and Auctioneers* § 1(a) (1937). The purpose of the requirement of the opportunity for competitive bidding is to insure that the sale of repossessed collateral is measured by a bona fide market value, and not by an artificial value. G.S. 25-9-504(5) encourages this result in that persons obtaining collateral under a guaranty or repurchase agreement are subject to the debtor's rights in the collateral when a subsequent disposition of the property is made under Article 9. *See, e.g., Reeves v. Associates Financial Services Co.*, 197 Neb. 107, 247 N.W. 2d 434 (1976).

In the case before us, all the materials presented on motion for summary judgment indicate that First Citizens conducted a public sale. Upon exercising its right as a secured creditor under G.S. 25-9-503 to repossess the automobile, First Citizens duly sent notice to plaintiff concerning sale of the collateral. *See* G.S. 25-9-504(3), -9-602, -9-603. The sale was held as scheduled, at which time any person had the right to enter a bid on the automobile. Hence, the elements of proper notice and opportunity for competitive bidding were satisfied.

Plaintiff contends, nevertheless, that the sale was invalidated by the fact that no third persons bid at the sale. We find no requirement that the collateral actually be sold. All that is required is that there be an opportunity for competitive bidding. Under G.S. 25-9-605(1)(a), the sale need not be postponed because of the lack of bidders:

"§ 25-9-605. *Postponement of public sale.* — (1) Any person exercising a power of sale or conducting a public sale hereunder

*may* postpone the sale to a day certain not later than six days, exclusive of Sunday, after the original date for the sale:

(a) When there are no bidders. . . ." (Emphasis added.)

That the presence of bidders does not control is more apparent when we note that a secured party may buy at any public sale. G.S. 25-9-504(3).

Moreover, it is apparent from the record that in this case the public sale held by First Citizens was consummated by the transfer of title to the automobile to defendant. William E. Smith, Assistant Vice President of First Citizens, stated by way of affidavit that at all public sales held by the bank, First Citizens, pursuant to the repurchase agreement, treats retail dealers as having placed a bid in the amount due upon the contract. He stated further that in this instance, First Citizens considered defendant as having placed a bid of the amount due, and as there were no outside bids, title was transferred to defendant. We note at this point that First Citizens' authority to enter a bid for defendant is not disputed.

In addition, we hold that G.S. 25-9-504(5) is inapplicable to the facts of this case. First, as discussed above, although defendant is a person "who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like", in this case defendant did not receive a "transfer of collateral" from First Citizens under that section. It is clear that First Citizens executed a change of title, and not an assignment of its rights as a secured creditor. In addition, at the time defendant gained possession of title, the automobile no longer qualified as "collateral" under G.S. 25-9-504(5) in that it was not "subject to a security interest", as required by G.S. 25-9-105(1)(c). Indeed, "[w]hen collateral is disposed of by a secured party after default, the disposition transfers to the purchaser for value all of the debtor's rights therein, *discharges the security interest under which it is made* and any security interest or lien subordinate thereto." (Emphasis added.) G.S. 25-9-504(4). Finally, we feel that the rationale underlying G.S. 25-9-504(5) is inapplicable to the present case. In *Rangel v. Bock Motor Co.*, 437 S.W. 2d 329 (Tex. Civ. App. 1969), the Court construed § 9.504(e), Texas Business & Commerce Code Annotated, which is in language identical to that contained in G.S. 25-9-504(5), as follows:

"There is no sale or disposition of the collateral under these provisions when a party other than a debtor who is liable to the secured party takes a transfer or is subrogated to the rights of the secured party. For example, in the common situation where the automobile dealer has agreed with the finance company that it will repurchase certain paper after the default of the prospective purchaser, a transfer of the *paper, or of the repossessed automobile by the finance company to the dealer pursuant to their agreement, will not be a disposition of collateral* under the provisions of the Code and the dealer will still have to comply with the provisions of Part 5 of Article 9." 437 S.W. 2d at 332, quoting Loiseaux, *"Default Proceedings Under The Texas Uniform Commercial Code,"* 44 Tex. L. Rev. 702, 709 (1966).

Although we concur in that reasoning, it is clear that in this case First Citizens complied with the North Carolina provisions for disposition of collateral in Part 5 and Part 6 of Article 9, Chapter 25, General Statutes of North Carolina. A public sale having been conducted prior to the transfer of title to defendant, to subject any further disposition of the automobile to the requirements of these provisions would be superfluous.

We hold that upon obtaining title to the repossessed automobile, defendant had no obligation to account to plaintiff for any surplus proceeds received through sale of the automobile to P & S. Although it is unfortunate that there were not higher bids placed on the automobile at the public sale by First Citizens, the fact remains that plaintiff was afforded an opportunity to realize a surplus in the sale of the car. The law requires no more.

The trial court, therefore, properly entered summary judgment in favor of defendant, and upon the facts of this case, we reject plaintiff's arguments concerning defendant's liability for unfair trade practices and for failing to serve proper notice of its sale of the automobile.

Affirmed.

Judge PARKER concurs.

Judge MARTIN (Robert M.) dissents.

Judge MARTIN (Robert M.), dissenting.

I dissent. The defendant in this case was obligated in any event to take back the automobile and tender the balance due on the note to the lender under the repurchase agreement. Under these circumstances, the fiction of deeming the dealer to have made a bid at the purported public sale in the amount of the balance due on the note makes the entire "public sale" a sham. The bank is protected from losing any of its money, the seller is always able to retake the car, and is free to resell it without having to account for any surplus that may result to the person from whom the car was repossessed. I am of the opinion that a public sale has not taken place in this instance, and, therefore, I respectfully decline to join the judgment of the majority.