**BOATMEN'S NATIONAL BANK OF CARTHAGE, Plaintiff–Respondent,**

v.

**Raymond Edward EIDSON and Stephania Mae Eidson, Defendants–Appellants.**

No. 16779.

Missouri Court of Appeals, Southern District, Division One.

Oct. 10, 1990.

J. Kevin Checkett, Esterly & Checkett, Carthage, for plaintiff-respondent.

Sylvia K. Byrnes–Ales, Roberts, Fleischaker & Williams, Joplin, for defendants-appellants.

MAUS, Judge.

In this action, Boatmen's National Bank of Carthage (Boatmen's) sought recovery against Raymond Edward Eidson and Stephania Mae Eidson (Eidsons) upon three promissory notes. The principal defense of the Eidsons was that Boatmen's sold collat-

eral securing those notes at a public sale after giving the form of notice authorized by § 400.9–504(3) for a private sale. They contend a recovery of deficiency judgments was barred by the doctrine announced in *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860 (Mo.App.1978). The trial court entered judgments for Boatmen's totalling $233,101.37. The Eidsons state three points on appeal. The following is an outline of relevant facts.

The three notes payable to Boatmen's were executed on the following dates for the following amounts.

| Note One– | September 26, 1983– | $ 12,011.00 |
| Note Two– | October 8, 1983– | $105,375.00 |
| Note Three– | October 23, 1984– | $ 25,004.00 |

Note One was secured by a Security Agreement covering four specifically described items of farm machinery. Note Two was secured by a Security Agreement covering all livestock and farm machinery, including seven specifically described items of farm machinery. Note Three was secured by a Security Agreement covering all livestock. Each security agreement provided the collateral also secured "all other liabilities of Debtor to Secured Party".

The Eidsons defaulted in the payment of the notes. They disposed of the livestock. Raymond Edward Eidson was convicted in a U.S. District Court of defrauding Boatmen's relating to the subject matter of this action. Boatmen's gained possession of the specifically described items of farm machinery. The machinery was placed on the parking lot of Boatmen's. Thereafter, on April 5, 1985, Boatmen's mailed to the Eidsons a letter describing these items and advising that Boatmen's was in possession thereof. The letter also stated:

"You are further notified pursuant to § 400.9–501–507 RSMo., that it intends to dispose of (sell) said collateral for cash unless you redeem same by paying the payoff balance. Disposition of said collateral will be by private sale and will occur after twenty days from the date of this letter. You may redeem the collateral at any time prior to sale."

On April 16, 19, 23 and 26, 1985, Boatmen's published, in the *Carthage Press*, an advertisement headed "Notice of Private Sale". This advertisement stated that "the following items of personal property will be sold by sealed bids" and described the items of farm machinery. It gave the address to which bids should be mailed and advised that "Bids will be opened at 2:00 p.m. on Tuesday, April 30, 1985, at the office of Lonnie Heckmaster located in the Boatmen's Bank of Carthage, 231 South Main Street, Carthage, Missouri." Eighty-two bids were received and the items were sold individually for a total of $14,976.68. This amount was credited upon Note Two.

The Eidsons' first point states "[t]he trial court erred in its finding that the bank's sale of collateral was a private sale", and they were prejudiced because "the bank held the public sale after sending notice of a private sale and without complying with statutory notice requirements for a public sale". Their second point is that the trial court erred because "the bank failed to sustain its burden of proof that it had complied with the strict requirements of § 400.9–504(3) that written notice of the time and place of a public sale of collateral be sent to the debtors" and "the bank had no right to the deficiency judgment rendered by the trial court." Each point is a rescript of the other. Each depends upon the validity of both of two propositions. First, that if notice of a private sale was given and a public sale was held, Boatmen's cannot recover a deficiency judgment for any of the remaining balances due upon the three promissory notes. Second, that the collateral in question was sold at a "public sale" as that term is used in § 400.9–504(3).

The doctrine upholding the Eidsons' first proposition has been often restated.

"Compliance with the notice provision of § 400.9–504(3) is a prerequisite to recovery of a deficiency after resale of the collateral. *Gateway Aviation, Inc. v. Cessna Aircraft Co.*, 577 S.W.2d 860, 862[4] (Mo.App.1978); *Executive Finan-*

*cial Services v. Garrison,* 535 F.Supp. 263, 265[2] (W.D.Mo.1982), aff'd, 722 F.2d 417 (8th Cir.1983)." *Modern Auto Company, Inc. v. Bell,* 678 S.W.2d 443, 444 (Mo.App.1984).

Also see *Chrysler Capital Corp. v. Cotlar,* 762 S.W.2d 859 (Mo.App.1989); *Boatmen's Bank of Nevada v. Dahmer,* 716 S.W.2d 876 (Mo.App.1986); *Clune Equipment Leasing Corp. v. Spangler,* 615 S.W.2d 106 (Mo.App.1981). That doctrine had its inception in this state in *Gateway Aviation, Inc. v. Cessna Aircraft Co., supra.* In *Gateway,* the court relied upon and followed *Anheuser v. Oswald Refractories Co., Inc.,* 541 S.W.2d 706 (Mo.App.1976). In *Anheuser,* the court was considering the right of a seller to recover the unpaid portion of the purchase price against a defaulting buyer following a resale of goods in the seller's possession. However, the statutes governing recovery by an unpaid seller of goods differ in principle from the statutes recognizing the right of recovery upon a negotiable instrument. A fundamental difference is demonstrated in the basic premise for *Anheuser.*

> "We hold that when a seller avails himself of *the remedy afforded by* [§] *400.2–706 he must comply with all of the terms of that section* and the burden of showing compliance is upon the seller...." *Anheuser* at 711.

(Emphasis added.)

The doctrine announced in *Gateway* is also based in part upon the following premise: "Since deficiency judgments after repossession of collateral are in derogation of the common law, any right to a deficiency accrues only after strict compliance with the relevant statutes." *Gateway* at 863. These two premises have resulted in the recognition of the "No Notice—No Deficiency" doctrine in this state.

However, recovery upon the three notes is not afforded or created by § 400.9–504(3). It is based upon § 400.3–301. Moreover, no court in this state has expressly considered the fact that the sections of *"Part 5*—Default" (empha-

sis added) include a provision which provides the consequences of the failure of a secured party to follow the directions of Part 5.

> "If it is established that the secured party is not proceeding in accordance with the provisions of *this part* disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition *has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part.* If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price." § 400.9–507(1). (Emphasis added.)

Nevertheless, further consideration of the validity of the Eidsons' first proposition is not necessary as their second proposition fails.

■ As stated, their second proposition is that the sale of the collateral to the highest bidders under sealed bids solicited by newspaper advertisement was a "public sale" within the meaning of § 400.9–504(3). The sections of Article 9—Secured Transactions do not, within those sections, expressly define "private sale" or "public sale". Section 400.9–504, dealing with the disposition of collateral after default, contemplates there are two types of sales.

> "Since the requirements for a public sale are more restrictive than those for private sale, the courts usually make their determination on the basis of whether the sale was public because all sales that are not public must be private." UCC—"Public" or "Private" Sale, 60 A.L.R.4th 1012, 1018 (1988).

The following is the generally understood meaning of the term "public sale".

"Generally a public sale requires notice or an invitation to the public to bid[,] permits the public to engage in competitive bidding, and is conducted at a public place or a place to which the public has access. 69 Am.Jur.2d Secured Transactions § 608 (1973); Annot., 4 A.L.R.2d 575 (1949)." *Bolen v. Mid-Continent Refrigerator Co.*, 411 N.E.2d 1255, 1259 (Ind.App.1980).

Also see 60 A.L.R.4th 1012, supra; *Shields v. Bobby Murray Chevrolet, Inc.*, 44 N.C. App. 427, 261 S.E.2d 238 (1980); *Garden Nat. Bank of Garden City v. Cada*, 241 Kan. 494, 738 P.2d 429 (1987). Competitive bidding refers to the basic concept of an auction, that is, knowledge of the highest bid with an opportunity to bid higher. *Shields v. Bobby Murray Chevrolet, Inc.*, supra.

 While Article 9 does not contain a definition of a public sale, it does include the following. "Any sale of goods is subject to the article on sales (article 2)." § 400.9-504(1). "The Official Comments to the UCC, while not having the force of statutory language enacted by the legislature, are a permissible and persuasive aid in determining legislative intent. See, e.g., *Interco, Inc. v. Randustrial Corp.*, 533 S.W.2d 257, 261, 262-63 (Mo.App.1976)." *Groppel Co., Inc. v. U.S. Gypsum Co.*, 616 S.W.2d 49, 57, n. 7 (Mo.App.1981). The Official Comments to § 400.2-706 of Article 2 include the following.

"4. Subsection (2) frees the remedy of resale from legalistic restrictions and enables the seller to resell in accordance with reasonable commercial practices so as to realize as high a price as possible in the circumstances. By 'public' sale is meant a sale by auction. A 'private' sale may be effected by solicitation and negotiation conducted either directly or through a broker. In choosing between a public and private sale the character of the goods must be considered and relevant trade practices and usages must be observed."

This court holds that the definitions contained in that comment are appropriate def-

initions of the terms "private sale" and "public sale" as used in § 400.9-504.

 Boatmen's did not sell the Eidsons' collateral by auction. The sales were effected by solicitation to the same extent as if offers to purchase had been made as the result of telephone solicitation or the items sitting on Boatmen's parking lot bearing a "for sale" sign. Cf. *Lloyd's Plan, Inc. v. Brown*, 268 N.W.2d 192 (Iowa 1978).

The trial court generally found all issues in favor of Boatmen's. This general finding and the result reached, in this court-tried case, Rule 73.01(a)(2), is a finding that the letter of April 5, 1985 constitutes reasonable notification of the time after which the collateral was to be sold at private sale. § 400.9-504(3). The Eidsons do not question the sufficiency of the letter as notice of a private sale. See *First Missouri Bank & Trust Co. v. Newman*, 680 S.W.2d 767 (Mo.App.1984); White and Summers, *Uniform Commercial Code*, (2d Ed.), § 27-12. The trial court correctly determined the collateral was sold at private sale. Therefore, the Eidsons' first two points have no merit. Their third point that the trial court erred in permitting Boatmen's to develop the issue of actual notice is immaterial. The judgment is affirmed.

PREWITT and CROW, JJ., concur.