ALCO STANDARD CORPORATION, Plaintiff-Appellee, *v.* F. & B. MANUFACTURING COMPANY, Defendant-Appellant.

(No. 70-65;

Second District—December 3, 1970.

Canfield, Canfield, Franks, Wylde & Hoad, of Rockford, for appellant.

Guyer & Enichen, of Rockford, for appellee.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Plaintiff brought suit against the defendant for a breach of contract involving the sale of a heat treating furnace. After a bench trial, the court held for the plaintiff and found damages to be in the amount of $9,095.00. The court further held that "the sum has been withheld by unreasonable and vexatious delay", assessed an additional sum of $505.00 to the amount of actual damages incurred and entered judgment for the total sum of $9600.00.

Ipsen Industries, referred to herein as plaintiff, is a division of Alco Standard Corporation and manufactures metal treating furnaces. For approximately three years prior to the controversy herein, Ipsen-Lab, another subsidiary of Alco, located near the plaintiff, had been treating certain of defendant's products.

In May of 1968, Mr. Anderson, a Vice-President of defendant, went to the plaintiff's plant and told one Watkins, an agent of the plaintiff, that he wanted to obtain a furnace for the defendant's Arizona plant. He wanted the largest and best suited furnace for defendant's needs and one that could be obtained in the shortest possible time. Anderson testified that he was told that the large unit he desired could not be fabricated in less than twenty to twenty-four weeks; he responded that this was too long a period of time and, after some discussion, he was told by Watkins that a furnace could be made up in about twelve weeks, and that it would serve their needs.

Anderson then called his office and was given a purchase order number which was turned over to Watkins. Watkins later drafted and sent to defendant a specification and purchase order providing for the sale of a Model VFC 924-S vacuum furnace. This order was signed and returned by defendant.

Watkins testified that Anderson came to plaintiff's plant and was desirous of obtaining the largest heat treating furnace he could get; that

two or three sizes were discussed; that delivery time was injected into the conversation; that he informed Anderson that the larger units would take from twenty to twenty-four weeks for delivery; that he was informed that this was too long a period of time; that he told Anderson that they had smaller units (Model VFC 924-S) coming through the plant which could be delivered in approximately ten weeks or less; and that Anderson found the smaller unit to be acceptable.

The furnace was delivered to Phoenix on or about July 6, and on July 12, one Wilson, an employee of plaintiff's California office went to the plant to supervise installation. At this point substantial conflict in the testimony arises. Defendant's Phoenix plant managers, the D'Ambrosio brothers, testified that on July 17, Wilson and one McIntier, plaintiff's west coast manager, came to the plant and examined the furnace; that McIntier came to the conclusion that the furnace which met the specifications called for in the contract would not meet defendant's needs, and that defendant should have the furnace shipped to a plant in California where there was another potential buyer.

The testimony offered by plaintiff's two employees, McIntier and Wilson, differs markedly. In substance they testified that when they arrived at the Phoenix plant on July 17, they were told by Anderson and the D'Ambrosio brothers that the defendant was planning to or had already cancelled the order because the furnace was not of sufficient capacity. They wanted to obtain a larger furnace from plaintiff to handle future production needs. McIntier testified that he was advised by the defendant's representatives to make arrangements to have the furnace removed from defendant's premises.

The furnace was shipped to a warehouse in California and sold to another manufacturer.

Plaintiff's complaint alleges the contract; fabrication and delivery of the furnace pursuant to the specification; the failure of the defendant to pay; the resale of the furnace to mitigate damages and a deficiency due.

Defendant filed an answer, generally denying the allegations of the complaint and set forth affirmative defenses that the contract was not mutually binding, was not in writing as required by the Statutes of Frauds, and that the facts alleged did not support the venue of the court. The latter two defenses are not before us in this review.

■■ Defendant complains that the court erred in failing to find an implied warranty that the furnace would be fit for the purpose required. In order to resolve this question, the trial court was required to make a judgment of the facts and decide whether or not such a warranty did exist. The court, after weighing the disputed testimony, found that there

was no such warranty. Additionally, the defense of the breach of an implied warranty is an affirmative defense which must be pleaded and proved by a preponderance of the evidence by the reliant. (*Radio Corp. of America v. Smith* (1969), 109 Ill.App.2d 91; *Burge Ice Mach. Co. v. Dickerson* (1965), 60 Ill.App.2d 266.) Defendant did not assert this defense in its pleadings, nor did it satisfy the trial court upon the evidence.

■■ Defendant contends that parties to a contract have a right to cancel it at anytime, relying on *Printing Mach. Maintenance v. Carton Products* (1957), 15 Ill.App.2d 543 and *Willis v. Ruthruff & Ryan* (1957), 14 Ill.App.2d 259. However, he omits from the rule *"by mutual agreement."* The burden of proving such mutual agreement is on the one who asserts it. The record herein does not disclose any mutual agreement. The testimony relating to the alleged cancellation was more or less the testimony of Wilson and McIntier.

Wilson, testifying to the conversation at the defendant's plant on July 17, 1968, said:

"Yes. And we discussed with the D'Ambrosio brothers and another gentleman—I don't remember, he was from Chicago—they said that they wanted to send this furnace back, and were interested in a larger one. And we had that discussion and nothing actually came to anything right there."

McIntier, testifying to the same conversation, stated:

"I believe Mr. Anderson informed me that they felt that the furnace was not of sufficient capacity to keep up with the production they either at that time had or were planning for in the future. And with that thought in mind, they were going to cancel this order, or had in effect canceled it."

Testimony offered by witnesses for the defendant indicated that both parties had agreed to cancel the contract, so that the trial judge was presented with a disputed issue of fact. His conclusion on this point was supported by the record and clearly was not against the manifest weight of the evidence.

■■ The defendant was not notified of the proposed resale of the furnace as required by Section 2—706(3) of the Commercial Code (Ill. Rev. Stat. 1967, ch. 26, par. 2—706(3)), and now complains that this failure is a complete defense to the action for the deficiency. Once again, the failure to notify defendant of the resale was not pleaded affirmatively. In our view, it should have been so pleaded in order for the defendant to avail itself of this defense and to properly place this issue before the trial court. We find no Illinois case explicitly designating the notice as an affirmative defense but hold that it is an affirmative

defense. Section 43(4) of the Civil Practice Act (Ill. Rev. Stat. 1967, ch. 110, par. 43(4)) provides:

"The facts constituting any affirmative defense, such as * * * an instrument or transaction is either void or voidable in point of law, or cannot be recovered upon by reason of any statute * * * and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, counter-claim, or third-party complaint, in whole or in part, and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply."

The phrase, "cannot be recovered upon by reason of any statute," clearly covers the factual situation in the instant case. In addition, the section further provides, "any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint" must be set forth in the answer. The defendant knew of the notice requirement and there was no excuse offered for its failure to plead it as an affirmative defense.

■■ In *Cunningham v. City of Sullivan* (1958), 15 Ill.App.2d 561, 567, the court defined an affirmative defense:

"At common law and under the codes the test of whether a defense is affirmative and so has to be pleaded by defendant is whether the defense gives color to the opposing party's claim and then asserts new matter by which the apparent right is defeated."

In our view this would be the effect of the notice requirement under the Uniform Commercial Code. Section 2—706 provides that one of the seller's remedies, where the buyer has in some way breached, is to resell the goods and recover the difference between the resale price and the contract price. The sale, however, must be commercially reasonable, and where the sale is private, as in this case, the seller must give the buyer reasonable notification of his intention to resell. Thus, the defendant is contending that in order for the seller to recover as damages the difference between the contract price and resale price, the sale must be commercially reasonable and with notice, and that since the resale did not meet these qualifications the buyer's right of recovery is barred. Such a defense admits the pleading of the plaintiff, but denies the debt by reason of the failure of the plaintiff to satisfy the statute.

■■ This defense was not pleaded. An affirmative defense must be raised in the trial court pleadings, and a defense not properly pleaded is deemed waived, even though it may appear to be within the evidence. *Parker v. Dameika*, 372 Ill. 235, 237 (1939); *Economy Truck Sales & Service, Inc. v. Granger*, 61 Ill.App.2d 111, 116 (1965).

The defendant's final argument is that when there is a dispute as to the existence of a legal obligation, or where one is conducting a reasonable defense to a claim, or where there is a dispute as to amount due, delay in making payment does not authorize an award of interest on the basis of unreasonable and vexatious delay. *Kelrick v. Kaplin,* 73 Ill.App. 2d 63, 71 (1966).

Both parties agree that the award of interest for unreasonable and vexatious delay was improper. The judgment was for $9,095.00 and the court awarded interest of $505.00.

It is the order of this Court that the portion of the judgment awarding interest of $505.00 for unreasonable and vexatious delay be reversed, and that the remainder of the judgment in favor of plaintiff in the amount of $9,095.00 be affirmed.

Judgment affirmed in part, reversed in part.

DAVIS, P. J., and ABRAHAMSON, J., concur.