**NORTHERN PLUMBING SUPPLY, INC.,**
**Plaintiff and Respondent,**

v.

**Robert B. GATES, Defendant and Appellant.**

**Civ. No. 8766.**

Supreme Court of North Dakota.

March 28, 1972.

Palda, Palda, Peterson, Anderson & Tossett, Minot, for plaintiff and respondent.

K. M. Knutson, Minot, for defendant and appellant.

STRUTZ, Chief Justice.

The plaintiff corporation sold to the defendant certain pipe which was not paid for by the defendant when plaintiff asserts payment became due. The parties, sometime after the plaintiff claims payment was due, went to the Union National Bank in Minot and co-signed a note for the amount of the purchase price, the plaintiff receiving all the proceeds of such loan. When the note became due at the bank, the defendant refused to make payment, asserting that the pipe which the plaintiff had delivered to him was not fit for the purpose for which he had purchased it. The plaintiff thereupon paid the note at the bank, and sued the defendant for the full amount thereof. The trial court found for the plaintiff, and the defendant appeals to this court from the judgment entered, demanding trial de novo.

■ The first issue to be determined on this appeal is whether the defendant, as appellant, was entitled to a trial de novo in this court, and a retrial of the facts in this case. Chapter 311 of the 1971 Session Laws repealed Section 28-27-32, North Dakota Century Code, which had provided for a trial de novo. The effective date of the repeal was July 1, 1971. The plaintiff now raises the issue of whether a trial de novo is available to the defendant at this time.

The record discloses that notice of appeal and demand for trial de novo were served on April 21, 1971, and that undertaking on appeal and supersedeas bond were served on April 23. The notice of appeal, the undertaking, and the supersedeas bond were filed within a day or so after being served. Our law provides that an appeal in a civil matter is taken on service of notice of appeal, and is perfected on service of undertaking for costs. Sec. 28-27-05, N.D.C.C. The appellant did serve and file his notice of appeal and undertaking prior to the effective date of repeal of the trial de novo statute. Therefore, the demand for trial de novo was timely made, and this court will try the facts in the case anew, giving appreciable weight to the findings of the trial court.

The facts, as gathered from the record, disclose that the defendant, in addition to being engaged in the business of farming, engages in the manufacture of harrow attachments which he calls "Quick-Tach" and which he produces on his farm. John Luxem, owner and operator of the plaintiff Northern Plumbing Supply, Inc., had heard that the defendant used pipe in his business and called on the defendant for the purpose of selling pipe to him. Luxem made several calls to the defendant's farm,

and it was either on one of those calls or on an occasion when the defendant called on Luxem at the plaintiff's place of business in Minot that they got down to the business of discussing prices. Luxem advised the defendant that he could save twenty per cent on the cost of the pipe if he would order in carload lots.

The defendant testified that he finally ordered a cardload of "standard" pipe with wall thickness of 0.133 inch. At the time of or prior to placing his order, he took a short piece of the pipe which he had been using to the plaintiff as a sample of what he wanted. This sample of pipe had a wall thickness of 0.133 inch. The defendant claims that he told Luxem that he wanted the same type of pipe as he had left as a sample. Luxem does not deny this, but asserts that he never considered the thickness of the sample pipe brought in by the defendant because the defendant had requested him to order standard pipe, and that is the type of pipe which the plaintiff delivered to the defendant.

At the trial, the plaintiff produced as an expert on pipe the manager of Twin City Testing, Engineering Laboratories, Inc., who testified that "standard pipe" varies in wall thickness from 0.116 to 0.133 inch. He stated that the trade would recognize pipe as "standard" regardless of its wall thickness, if that thickness was between 0.116 and 0.133 inch, inclusive, and that any pipe having a wall thickness between these specifications would meet the requirement of "standard pipe." He further testified that pipe with a wall thickness of 0.120 inch, which was the wall thickness of much of the pipe which the plaintiff delivered to the defendant, was standard pipe, but that pipe of that specification should not be used where it is subject to external stress and should be used only for steam, water, gas, and air lines.

The defendant testified that he had used the pipe which he received from the plaintiff in the manufacture of about 500 harrow-attachment units, and that by the time of trial he had had to replace 100 of such

units. He believed that eventually all 500 units would have to be replaced.

There is dispute as to when the pipe was to be paid for. The plaintiff claims that payment was due on August 10, 1969. The defendant, on the other hand, contends that he told Luxem he would be unable to pay for an entire carload unless he were permitted to pay for such pipe as he used it and sold the attachments which he was manufacturing. In any event, it is not disputed that the pipe was not paid for by October 20, 1969. On that date, the parties went to the Union National Bank at Minot and signed a note for the full amount due for the pipe. The money thus obtained was given to the plaintiff. The plaintiff and the defendant signed the note as joint makers, jointly and severally promising to pay the amount specified therein, by April 20, 1970. Although the note was signed by the parties as joint makers, Luxem testified that the plaintiff had signed only as an accommodation maker. The defendant, however, claims that he signed the note only as an accommodation to the plaintiff, which needed the money.

When the note became due, on April 20, 1970, the defendant refused to make payment, and it was paid by the plaintiff. The note then was endorsed over to the plaintiff without recourse by the Union National Bank.

 Each of the parties thus claims to have signed the note only as an accommodation to the other maker. If the defendant is correct, and he signed as an accommodation maker with the plaintiff, the plaintiff clearly cannot recover from the defendant since a party for whose accommodation a note was executed cannot recover from the accommodation party. First State Bank of Eckman v. Kelly, 30 N.D. 84, 152 N.W. 125 (1915). It therefore becomes important to know just what the dealings of the parties were which led to the signing of the note. The plaintiff obviously was not a holder in due course of the note, and the defendant could raise any

defense he might have to the payment of it, including failure of consideration. Under Section 41–03–32, North Dakota Century Code, the Uniform Commercial Code defines a "holder in due course" as one who takes the instrument without notice that it is overdue or has been dishonored or of any defense to its payment. The plaintiff not being a holder in due course, the entire transaction which led to the giving of the note therefore can be examined to determine whether there was a failure of consideration for the giving of the note. In a suit on a note given for purchase of personal property, a claim of breach of warranty is equivalent to a plea of failure of consideration, and such defense is allowed on the principle that consideration of a note is open to inquiry as far as promise to pay depends upon its existence. A. E. Speer, Inc. v. McCorvey, 77 Ga.App. 715, 49 S.E.2d 677 (1948).

■ The defendant purchased the pipe from the plaintiff for the purpose of manufacturing harrow attachments. Plaintiff does not deny that it knew the purpose for which the pipe was purchased, but asserts that its only concern was to secure for the defendant "standard pipe," which it insists was what the defendant had ordered. The defendant claims, however, that when he took a section of the pipe he had been using to the plaintiff's place of business, he told Mr. Luxem, president of the plaintiff, that he wanted pipe like that sample, which had a wall thickness of 0.133 inch. In other words, he ordered standard pipe of the same thickness as the sample. The plaintiff asserts that when the defendant requested "standard pipe," and that is what he received, the plaintiff had fulfilled all of its responsibility. Luxem denies that he ever looked at or considered the thickness of the sample which was brought to him by the defendant, but asserts that he proceeded to order and then delivered to the defendant standard pipe which was the type of pipe left by the defendant as a sample.

There is no doubt from the record that the plaintiff's president knew the defendant was going to use the pipe for harrow attachments. He had visited the defendant's manufacturing plant on at least three occasions for the purpose of selling pipe. He denies that he ever looked at the defendant's harrow attachments, as the defendant claims he did. In this, however, we believe the plaintiff is mistaken. One of the men working in the defendant's plant testified positively that he was present on one of the occasions when Luxem visited the plant, and that he examined various harrow attachments the defendant was manufacturing. This witness was asked what he had observed the defendant do on that occasion, and he replied:

"He and Mr. Luxem were going from one piece of equipment to the other. Mr. Gates was showing him different pieces of pipe, different attachments."

It would seem unlikely that Luxem, whose business included selling pipe and similar goods, would visit a prospective customer for the purpose of selling a carload of pipe, without knowing or inquiring about the use to be made of it. Luxem does not deny that he knew how the pipe was to be used. He testified that he knew it would make a difference if the pipe were used for a purpose which would place on it external stress, but he stands on the proposition that the defendant had ordered standard pipe, and that it wasn't the plaintiff's duty to make any inquiry as to its thickness; that any pipe with a wall thickness of 0.116 to 0.133 inch is standard pipe; and that the plaintiff therefore furnished what the defendant ordered. Beyond that, the plaintiff denies all responsibility.

We believe Luxem knew the specific purpose for which this pipe was to be used, since he was asked, on cross-examination:

"Q. So you knew he was going to use it in his farm implements?

"A. Yes, I could care less."

As previously pointed out, Luxem admitted that it would make a difference what type of pipe was used, if there was to be external pressure applied to it. Yet, knowing—as we believe he did know—what the pipe was to be used for, and knowing that it would require stronger pipe if external stress was to be applied to it, Luxem nevertheless proceeded to furnish standard pipe, regardless of the thickness, which he asserts was requested by the defendant, even though most of the pipe which the plaintiff furnished was pipe which, as was testified by the plaintiff's own expert, should be used for steam, water, gas, and air lines, where the pressure would be applied from the inside. Plaintiff relies on its president's assertion that he made no representation to the defendant as to what the "standard pipe" would or would not do. The plaintiff supplied "standard pipe," and acknowledges no further responsibility beyond that, even though the pipe furnished was not fit for the purpose for which it was purchased, which purpose, we find, was known to the plaintiff as seller at the time of sale. We further find that the defendant, who knew little about the classification of various types of pipe, relied on the plaintiff to furnish the type of pipe needed for his operations.

Section 41–02–32, North Dakota Century Code, is a part of the Uniform Commercial Code. It provides that where the seller, at the time of contracting, has reason to know any particular purpose for which goods are required, and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is an implied warranty, unless excluded or modified under Section 41–02–33, North Dakota Century Code, that the goods shall be fit for that purpose. This case does not come within any of the listed exceptions. Here, the buyer brings in a section of pipe that has a wall thickness of 0.133 inch. He leaves that sample of pipe with the seller and requests that it furnish pipe like the sample he leaves with the seller. The defendant is a farmer and has no way of knowing that standard pipe would include not only pipe with a wall thickness of 0.133 inch, like the sample he left with the plaintiff, but also pipe with a wall thickness of only 0.116 inch, which would be too thin for his purposes. The plaintiff, on the other hand, is a supplier of pipe. As seller, it and its agents know, or should know, all about pipes. Knowing that the pipe requested by the defendant is to be used for harrow attachments, where there will be stress on the outside of the pipe, it nevertheless delivers to the defendant pipe wholly unfit for such purpose; pipe which its own expert admitted should be used for steam, water, gas, and air lines.

Since all the elements of an implied warranty were present in this case, the judgment for the plaintiff must be reversed.

On the prompt return to the plaintiff by the defendant of the unused portion of the pipe, the amount due the plaintiff shall be reduced proportionately. In determining the amount due, no interest shall be allowed.

Having found for the plaintiff, the trial court dismissed the counterclaim of the defendant. In view of what we have said in this opinion, the case is remanded for the purpose of determining what, if anything, the defendant should recover on his counterclaim.

ERICKSTAD, PAULSON and KNUDSON, JJ., concur.

TEIGEN, Justice (dissenting).

I dissent. The defendant has not pleaded, claimed, proved nor argued implied warranty of fitness for a particular purpose. The defendant's answer and counterclaim allege that the defendant did not get the pipe he ordered. In his pleadings he claims that he ordered "standard" pipe but received substandard pipe in that the wall thickness was only .120 inch and that it was not as represented by the plaintiff.

The defendant operates a factory in which he employs twelve men. He has been

manufacturing harrow attachments in which pipe is used since 1968. In the past he has been purchasing pipe in quantities of 7,000 to 8,000 feet per purchase from at least two suppliers. A carload of this pipe contains about 22,000 feet.

It is true, as the majority state, that the defendant showed Mr. Luxem through his factory and that he looked at some of the attachments being manufactured. There is, however, no evidence that the defendant sought Mr. Luxem's opinion or his recommendation in regard to the type, quality, size or grade of pipe which should be used in the manufacturing process. In other words, I find no evidence whatever that the defendant relied on or sought the benefit of whatever skill or knowledge Mr. Luxem might have in this field. He certainly did not rely on Mr. Luxem's skill in making a choice for him. In fact, to the contrary, the defendant, Mr. Gates, testified as follows:

"Q. What kind of pipe did you order?

"A. I told John that I wanted the same kind of pipe as what I had been using at the same price.

"Q. Did you tell him what kind of pipe you were using?

"A. I did.

"Q. What kind of pipe were you using?

"A. Standard pipe with a wall thickness of .133.

"Q. Yes. You told him you wanted standard pipe?

"A. That's right."

The evidence establishes, according to the expert testimony of record, that "standard" pipe in the trade, universally, has a wall thickness varying from .116 to .133 inch. The pipe which was delivered comes within these limits and it is not disputed that it is not "standard" pipe. I think that the trial judge summed it up correctly when he stated, in ruling from the bench, as follows:

"However, I find no evidence in the record to specify what kind of pipe Mr. Gates was using, other than standard black pipe. The testimony is that he received standard black pipe, one-inch. As far as the testing specifications are concerned, the evidence also indicates that it's within this same range."

The defendant did not plead breach of implied warranty as an affirmative defense nor as a basis for his counterclaim. The majority apparently have concluded that, in some way, this principle has become an issue. If we consider that it has, then, under the provisions of the Uniform Commercial Code, the defendant has the burden of establishing such breach by a preponderance of the evidence. Alco Standard Corp. v. F & B Manufacturing Co., 265 N.E.2d 507 (Ill.App.1970).

An essential element of implied warranty of fitness for a particular purpose under Section 41–02–32, N.D.C.C., which is Section 2–315 of the Uniform Commercial Code, is that the buyer was *"relying on the seller's skill or judgment to select or furnish suitable goods."* [Emphasis added.] In reference to this element it is stated in the commentaries contained in Anderson —Uniform Commercial Code, 2d edition, § 2–315:19:

" * * * that no warranty of fitness for a particular purpose arises when it is clear that the buyer orders goods according to his own specifications and does not rely on the seller's skill or judgment, * * *"

And § 2–315:23:

"No warranty of fitness for a particular purpose arises when the buyer receives the exact goods which he ordered."

In Uniform Laws Annotated—Uniform Commercial Code, Master Edition, Vol. 1, in the official comment with respect to § 2–315, it is stated that "the buyer, of course, must actually be relying on the seller" if a warranty is to arise under this section.

In Bender's Uniform Commercial Code Service, Vol. 3, § 7.02, at 7–23, in referring to the Uniform Code and also the Uniform Sales Act, it is stated:

"Under both statutes there is the necessity that the buyer rely upon the seller's skill or judgment in selecting or furnishing suitable goods."

The defendant Gates, in my opinion, has not sustained the burden of proof. In fact, by his own testimony he has admitted that he himself made the selection and ordered the pipe in accordance with his own specifications when he stated on the witness stand that he ordered standard pipe, which has a definite and specific meaning in the trade.

For the foregoing reasons it is my opinion that the judgment of the trial court should be affirmed.