Fred S. ANHEUSER,
Plaintiff-Respondent,

v.

OSWALD REFRACTORIES COMPANY, INC. (Now EMO Corp.),
Defendant-Appellant.

No. 36585.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Aug. 3, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Gerald R. Ortbals, Ziercher, Hocker, Tzinberg, Human & Michenfelder, St. Louis, for defendant-appellant.

Norris Allen, Anderson, Gilbert, Wolfort, Allen & Bierman, St. Louis, for plaintiff-respondent.

STEWART, Judge.

Plaintiff brought an action to recover $5,000.00 which he had paid to defendant as part of the purchase price for a cabin cruiser. In a court-tried case plaintiff had judgment as prayed with interest. We reverse and remand.

On November 13, 1970, defendant's boat, Teri-Ho II, enroute to Memphis, Tennessee, and then to New Orleans, Louisiana, tied up at Hoppie's Landing in Kimmswick, Missouri, on the Mississippi River. Plaintiff came aboard to visit with Mr. Oswald, agent of defendant. Plaintiff expressed a desire to purchase the boat. Plaintiff agreed to purchase and defendant through Mr. Oswald agreed to sell the boat for $25,000.00. Before plaintiff agreed to purchase the boat he took a trial run on the river with a Mr. Fabick who was referred to as the Captain of the boat.

After a trip to Cape Girardeau to keep a prior engagement the Teri-Ho II returned to Kimmswick where possession of the boat was turned over to plaintiff. Plaintiff gave defendant's Mr. Oswald a check for $5,000.00, dated November 14, 1970. The check cleared the bank on November 16 or 18.

On November 20, 1970, Mr. Oswald and Mr. J. Soulard Johnson went to Kimmswick where the boat was located and where plaintiff lived.

Plaintiff was presented with two documents.[1] He signed the following document:
"November 20, 1970
Mr. Harold Oswald
Oswald Refractories Company, Inc.
1750 S. Brentwood Blvd.
St. Louis, Missouri 63144
Dear Mr. Oswald:
I hereby confirm the fact that I do not wish to proceed with the purchase of the cruiser TERI–HO II and you are hereby released from the agreement made between the writer to purchase the boat and yourself.
This will serve to authorize you to remove the boat from Hoppie's Marina at Kimmswick, Missouri to proper storage and care for winterizing so that no damage accrues to the engines and other water system.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

(typed) Fred S. Anheuser
WITNESS:
(Signed) J. Soulard Johnson"
(reverse side) (handwritten)
"May 20, 1974
The original of this photostat was signed by Fred S. Anheuser and witnessed by me at Kimmswick, Missouri and delivered to Harold Oswald, on or about the date shown on the face, the day I witnessed it.
(signed) J. Soulard Johnson)

After plaintiff signed the document defendant took possession of the boat. No part of the $5,000.00 was ever remitted to plaintiff.

Mr. Oswald died on June 23, 1971. "Subsequent to Mr. Oswald's death" attempts

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

1. Mr. Oswald died before the trial. Thus the contents of the second document were excluded under the Dead Man's Statute, V.A.M.S. 491.010.

were made to sell the boat. The boat was finally sold at a private sale for $20,000.00. The date of sale does not appear in the transcript.

In May of 1971 plaintiff filed a petition to begin this action. A statement of the substance of the pleadings is necessary to our discussion.

Plaintiff alleged that on November 20, 1970, he executed a copy of an "agreement to set aside the agreement to purchase said boat . . . " and that defendant advised plaintiff at that time when plaintiff's check was honored by the bank on which it was drawn defendant would remit the part purchase price of $5,000.00. The letter of November 20, 1970, which is set out above, was made a part of the petition by reference. Plaintiff prayed judgment for $5,000.00 and interest from December 3, 1970.

Plaintiff had also alleged that the boat was found to be "in a mechanical condition less favorable than said boat had been reported to be" and that this was reported to defendant. There was no proof of these issues and whatever issue these allegations sought to raise was abandoned by plaintiff.

Defendant's answer admitted the agreement of purchase; that it received $5,000.00; that no part of the $5,000.00 was returned to plaintiff. It denied all of the other allegations set out above.

The trial court came to the following conclusion:

"In view of the fact that there was an agreement to buy the boat by the plaintiff and that he made a part payment, and there is no dispute as to the amount that plaintiff agreed to pay for the boat, defendant had the remedy of insisting on the payment for the boat, which was then in the possession of the defendant, on which part payment had been made.

"Defendant also had the right, since it is a reasonable inference from the evidence that plaintiff wished not to go forward with the deal, to call off the deal and rescind the contract."

The court then found that the seller, having elected to accept the buyer's choice of returning the boat, had elected between the remedy of affirming the contract and seeking to recover the purchase price and of disaffirmance and restitution.

The court also concluded that defendant had elected the remedy of cancellation under the Uniform Commercial Code Section 400.2–703(f).

The court also found that defendant had not pleaded or proved that it had complied with the resale provisions of Section 400.2–706.

■ In our review of this case we are governed by Rule 73.01. As interpreted by *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), the judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law.

■ There was in this case a valid contract of sale. Plaintiff agreed to purchase the boat and pay $25,000.00. Defendant agreed to sell and delivered possession of the boat to plaintiff. Plaintiff became obligated to pay to defendant the sum of $25,-000.00. He had paid $5,000.00. Defendant could have enforced payment. It was plaintiff who wanted to repudiate the transaction. The letter of November 20, 1970, did "confirm" that fact and we believe constituted a cancellation within the definition of Section 400.2–106(4) of the Uniform Commercial Code which reads:

"(4) 'Cancellation' occurs when either party puts an end to the contract for breach by the other and its effect is the same as that of 'termination' except that the cancelling party also retains any remedy for breach of the whole contract or any unperformed balance. (L.1963 p. 518 § 2–106)"

As the court noted cancellation is listed as one of the remedies available to the seller under section 400.2–703. However, the effect of cancellation must be consistent with the code definition. The official comment under 400.2–703 is also enlightening:

"1. This section is an index section which gathers together in one convenient place all of the various remedies open to a seller for any breach by the buyer. This Article rejects any doctrine of election of remedy as a fundamental policy and thus the remedies are essentially cumulative in nature and include all of the available remedies for breach. Whether the pursuit of one remedy bars another depends entirely on the facts of the individual case."

Basic to our determination is the letter of November 20, which must be read in the light of the above code provisions and comments along with 400.2–720:

"Unless the contrary intention clearly appears, expressions of 'cancellation' or 'rescission' of the contract or the like shall not be construed as a renunciation or discharge of any claim in damages for an antecedent breach. (L.1963 p. 546 § 2–720)"

The code comment under this section reads:

"This section is designed to safeguard a person holding a right of action from any unintentional loss of rights by the ill-advised use of such terms as 'cancellation', 'rescission', or the like. Once a party's rights have accrued they are not to be lightly impaired by concessions made in business decency and without intention to forego them. Therefore, unless the cancellation of a contract expressly declares that it is 'without reservation of rights', or the like, it cannot be considered to be a renunciation under this section."

The plaintiff testified that the agreement in the letter expressed his decision not to go through with the purchase of the boat.[2] The plaintiff had originally accepted the boat. It is apparent from the letter that plaintiff subsequently determined that he did not want the boat. There is no evidence of record that would warrant revocation of his acceptance. Defendant obtained permission to take back the boat to protect it and to thus avoid further damage to plaintiff.

It is significant that the letter does not provide for the return of the $5,000.00, nor does it expressly provide for a waiver of any of the other remedies which are available to the defendant. In fact, defendant has tenaciously held on to the $5,000.00 and has sought to defeat plaintiff's claim to any part of this money.

While the Uniform Commercial Code has not eliminated the concept of "election of remedies" it has rejected it as a fundamental policy. Applying the facts of this case to the provisions of the code we cannot say that defendant elected, as his sole remedy, the cancellation of the sale. Under these circumstances we cannot say that plaintiff has carried his burden of proving that he is entitled to the return of $5,000.00 upon this theory.

Defendant would have us determine that it is entitled to retain the $5,000.00 because it was an earnest money payment or, alternatively, that the subsequent sale of the boat for $20,000.00 ($5,000.00 less than the agreed purchase price) established the damages to which it was entitled. We cannot agree with either contention.

It appears that the parties have misconceived the nature of this action. Both seem to have approached the case as a common law action, although some brief reference is made to the Uniform Commercial Code. This action is governed by that code and in particular that part of the code which has been adopted in Missouri as chapter 400.2 "Uniform Commercial Code—Sales."

We are of the opinion that § 400.2–718 governs this action. At the expense of

---

**2.** "[by defendant's counsel] Q. And this agreement purports to cover your decision not to complete the purchase of the TERI–HO. Is that correct?

[by Mr. Anheuser] A. Yes.

Q. Did you ask that any written agreement be included in there about the earnest money?

A. No.

Q. So you signed the agreement without that. Is that correct?

A. Correct."

brevity, but in the interest of clarity we set out that section verbatim:

"(1) Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as. a penalty.

(2) Where the seller justifiably withholds delivery of goods because of the buyer's breach, the buyer is entitled to restitution of any amount by which the sum of his payments exceeds

(a) the amount to which the seller is entitled by virtue of terms liquidating the seller's damages in accordance with subsection (1), or

(b) in the absence of such terms, twenty per cent of the value of the total performance for which the buyer is obligated under the contract or five hundred dollars, whichever is smaller.

(3) The buyer's right to restitution under subsection(2) is subject to offset to the extent that the seller establishes

(a) a right to recover damages under the provisions of this article other than subsection (1), and (b) the amount or value of any benefits received by the buyer directly or indirectly by reason of the contract.

(4) Where a seller has received payment in goods their reasonable value or the proceeds of their resale shall be treated as payments for the purposes of subsection (2); but if the seller has notice of the buyer's breach before reselling goods received in part performance, his resale is subject to the conditions laid down in this article on resale by an aggrieved seller (section 400.2–706). (L.1963 p. 545 § 2–718)"

The parties have not directed us to any Missouri cases which discuss this section and we have found none in our independent research. Where extant, we shall look to other jurisdictions for guidance.

█ It is clear that subsection (1) was intended to abolish the concept of earnest money forfeiture. Liquidated damages are permitted by agreement within the limitations set forth. There is no evidence in this case to warrant a finding that the parties had agreed upon liquidated damages within the provisions of 400.2–718(1).

Defendant argues that the sale of the boat, at private sale, sometime after Mr. Oswald's death at a price of $5,000.00 less than the price agreed upon by plaintiff established defendant's damages at that sum. Plaintiff counters that it was incumbent upon defendant to plead and prove that defendant had given plaintiff reasonable notice of the sale in accordance with 400.2–706.[3]

█ The only case we have been able to find which discusses this problem is *Alco Standard Corporation v. F. & B. Mfg. Co.*, 132 Ill.App.2d 24, 265 N.E.2d 507 (1970). The court acknowledged that it was blazing the trail when it held that failure to notify the purchaser of the sale was an affirmative defense which must be pleaded and proved by the purchaser. We cannot agree with the conclusion of that court. The right to sell is a remedy extended to the seller by the code (400.2–703 & 706). We hold that when a seller avails himself of the remedy afforded by 400.2–706 he must comply with all of the terms of that section and the burden of showing compliance is upon the seller. In this case there was no finding upon this issue. Plaintiff testified over objection that he had received no notice. Defendant offered no proof. As this case now stands defendant has not pleaded or proved that he complied with 400.2–706 and it may not recover the difference between the sale price and the contract price. See *Portal Gallaries, Inc. v. Tomar Products, Inc.*, 60 Misc.2d 523, 302 N.Y.S.2d 871 (Sup.Ct.1969).

**3.** (3) "Where the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell."

We also note that there was no evidence that the boat was sold because of the failure of plaintiff to complete the purchase. There was no evidence concerning the manner in which the boat was used from November 1970 until the time of sale.

 There was no agreement for liquidated damages. The rights of the parties are governed by subsection (2)(b) and (3) of 400.2–718.

Preliminary to a further discussion we take cognizance of the language of the opening clause of subsection (2) which states that the remedies are available "where the seller justifiably withholds delivery of goods . . ." We do not find this language restrictive but are of the opinion that it contemplates the situation which we have before us. Defendant gave plaintiff possession of the boat. When plaintiff advised defendant that he did not want to complete the purchase the boat was turned over to defendant. At that point there had been a cancellation of the contract as contemplated by 400.2–720, as previously discussed. The parties then stood in the same position as though the seller had withheld delivery of the goods. Thus we hold that subsection (2) is applicable to this case. Plaintiff is entitled to restitution of his past payment within the limitations set forth in subsection (2)(a) and (2)(b).

Subsection (2)(a) as discussed above is not applicable because there was no agreement for liquidated damages. By subsection (2)(b) defendant is entitled to at least $500.00. Subsection (3)(a) also provides for the alternative right of the seller to set off against the buyer's right of restitution any damages which he can establish under the provisions of the code. A general discussion of this question can be found in *Neri v. Retail Marine Corporation*, 30 N.Y.2d 393, 334 N.Y.S.2d 165, 285 N.E.2d 311 (1972). This is not a retail sale and thus the provisions concerning loss of profits which are discussed in *Neri* would not be applicable. However, the court points out that incidental damages could be considered. There was some evidence that defendant suffered some such damage by reason of the fact

that he had to send a man to Kimmswick to get the boat. The extent of damage was not fully developed.

 In view of the fact that the parties have misconceived their rights under the governing statute justice requires that they be given an opportunity to retry the case in accordance with 400.2–718. The cause is reversed and remanded. The parties are to have the opportunity to amend their pleadings to conform with the provision 400.2–718(2)(b) or (3).

CLEMENS, P. J., and DOWD, J., concur.