**COMPUTER SALES INTERNATIONAL, INC., Plaintiff–Respondent,**

v.

**FAMILY GUARDIAN LIFE INSURANCE COMPANY, Defendant–Appellant.**

**No. 62582.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 31, 1993.

---

Leo V. Garvin, Jr., Paul M. Maloney, St. Louis, for appellant.

Frank Susman, Randall B. Kahn, St. Louis, for respondent.

STEPHAN, Judge.

This appeal involves an action initiated by Computer Sales International ("CSI") to recover damages incurred when Family Guardian Life Insurance Company ("Family Guardian") breached the contract on the sale of a mainframe computer by refusing delivery. The jury found for CSI and awarded damages of $109,200.00. Both parties stipulated that, in the event of a jury finding in favor of CSI, the court should determine CSI's right to reasonable expenses and attorney fees. The court found CSI entitled to $31,973.81 in interest and $25,257.73 in attorney fees. Family Guardian appeals the judgment awarding CSI a total of $166,431.54 in damages. We affirm.

We view the evidence in the light most favorable to the verdict, considering only that which supports it, and disregarding contrary evidence and inferences. *Lane v. Cape Mutual Insurance Co.*, 674 S.W.2d 644, 645 (Mo.App.1984). The evidence, viewed in this light, established that on March 16, 1990, Family Guardian contracted to purchase an Amdahl 5880 ("computer") from CSI for $229,000.00. Family Guardian made an initial downpayment on the computer of $45,-800.00, with the balance to be paid after its delivery and installation on May 12, 1990. Then, shortly before the May 12 deadline, Family Guardian contacted CSI and requested that delivery of the computer be delayed.

The decision to purchase the computer had been vetoed by its parent corporation, and Family Guardian needed the extended delivery date to determine its available options and work towards a resolution of the problem.

CSI responded by letter dated May 14, 1990, and agreed to forestall delivery until May 25, 1990. This letter indicated further that if CSI did not receive payment or a satisfactory resolution had not been worked out by this date, then CSI would consider the contract repudiated, and would take immediate steps to resell the computer and look to Family Guardian for any deficiency. CSI sent a similar letter on May 17, 1990, reiterating CSI's intentions to resell the computer in the event Family Guardian breached the contract.

The May 25th deadline passed, and Family Guardian had still not accepted delivery of the computer, or made alternative arrangements with CSI. In fact, Family Guardian failed to initiate any contact with CSI during this period to apprise CSI of its intentions. Meanwhile, the market price of the computer began to drop, so CSI commenced efforts to resell the computer and minimize its losses. CSI told Family Guardian of these efforts in a letter dated June 1, 1990. This letter, sent via facsimile, purported to be formal notice of CSI's intentions to resell the computer within the next ten business days and to assess Family Guardian for any deficiency. The ten day period elapsed without the resale of the computer. On June 14, 1990, CSI sent another letter to Family Guardian stating it was continuing its efforts to resell the computer. Family Guardian received this letter on June 18, 1990.

On June 15, 1990, CSI sold the computer to a third party for $60,000.00. CSI credited Family Guardian's account for the resale amount, along with the initial downpayment of $45,800.00, and $14,000.00 in saved installation and transportation expenses stemming from the breach. CSI asserted the remaining balance of $109,200.00 as a deficiency against Family Guardian, and sued to recover. The jury found in favor of CSI.

On appeal Family Guardian complains that: (1) CSI did not properly plead the notice requirement, (2) CSI did not provide it with "reasonable notice" or the notice required by the sales agreement, (3) instruction No. 5 misled the jury, and (4) the court's award of interest and attorney's fees was improper.

█ Family Guardian alleges in its first point that the trial court erred in allowing CSI to recover the difference between the sales agreement price and the amount received on the resale of the computer because CSI failed to plead that it had provided Family Guardian with the statutory notice requirement for a private sale under § 400.2–706(3), R.S.Mo.1986. The relevant portions of this statute are as follows:

(1) ... Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price....

(3) Where the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell.

Family Guardian argues that *Anheuser v. Oswald Refractories Co.*, 541 S.W.2d 706, 711 (Mo.App.1976), stands for the proposition that in order for CSI to recover a deficiency, it must plead *and* prove that it provided Family Guardian with "reasonable notice" under the statute. In *Anheuser*, the buyer of a cabin cruiser boat brought suit against the seller to recover $5,000.00 he paid as part of the purchase price for the boat. *Id.* After buyer repudiated the contract, seller took possession of the boat and later sold it at a private sale. *Id.* At trial, the seller did not introduce any evidence indicating that he gave buyer reasonable notice of his intention to resell the boat. *Id.* The court found that § 400.2–706 governed this transaction and that, since seller had not pleaded or proved compliance with this section, the seller was not entitled to recover the difference between the resale price and the contract price. *Anheuser*, 541 S.W.2d at 711.

The present case is clearly distinguishable. At trial, CSI introduced four letters which it sent to Family Guardian. Each letter announced CSI's intentions to resell the computer and to hold Family Guardian liable for any deficiency. While Family Guardian had objected to the introduction of these letters at a pre-trial conference, it did not properly preserve for our review its complaint that the letters exceeded the scope of the pleadings. During the course of the trial, Family Guardian did not object to the admission of these letters, and, in fact, stipulated to their admission into the record. Therefore, since the letters were allowed in as evidence of notice at trial without objection, we defer to Rule 55.33(b).

Rule 55.33(b) provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, the issues are treated as if they were raised in the pleadings. By not objecting to the admission of the letters at trial, Family Guardian consented to try the issue of whether the letters constituted "reasonable notice" under the statute. We deem the pleadings were amended to conform to the evidence. Thus, any deficiency in CSI's original pleadings was cured by the evidence at trial.

█ Moreover, the objective of pleadings is to present, define, and isolate the controverted issues to advise the trial court and the parties of the issues to be tried, and to expedite trial on the merits. *Walker v. Kansas City Star Co.*, 406 S.W.2d 44, 54 (Mo.1966). Certainly Family Guardian was well aware of CSI's intention to resell the computer. Family Guardian acknowledged receipt of all letters sent by CSI informing it of CSI's desire to resell the computer.

Finally, we note that Family Guardian had also pled in its answer, as an affirmative defense, that CSI had failed to plead the notice requirements of § 400.2–706. CSI was then granted leave to amend its pleadings to conform to the notice requirement of § 400.2–706. CSI's general amendment simply stated that "plaintiffs assert its remedies and damages as afforded to it under the Uniform Commercial Code, and specifically Missouri Revised Statutes § 400.2–706." The trial judge allowed this amendment and found that "no prejudice will result" since Family Guardian was aware that "this particular section of the statute was before the

parties, although not pleaded, and there can be no surprise on the part of the defendant."

■ A properly drafted petition requires a party to plead each element in a stated cause of action. Admittedly, CSI did not perfectly plead the notice requirement. However, the record is replete with evidence that Family Guardian was under no misapprehension concerning CSI's intentions to resell the computer. Therefore, it is not fatal to CSI's recovery that it failed to specifically plead the notice requirement. Point denied.

Family Guardian argues in its second point that CSI failed to adhere to the private sale notice requirements of § 400.2–706(3). Missouri courts have held that the notice requirements under § 400.2–706 must be strictly adhered to before a seller is entitled to damages. *Anheuser*, 541 S.W.2d at 711. Family Guardian asserts that CSI did not comply with the notice requirements because it failed to provide either "reasonable notice" under the statute, or the notice required by the parties' sales agreement.

Family Guardian complains that none of the letters it received from CSI was sufficient to constitute "reasonable notice" under § 400.2–706. The disputed letters were sent by CSI to Family Guardian on May 14, and June 1, 1990. At the outset we note that Family Guardian stipulated at trial that it had received both of these letters.[1]

■ On May 14, 1990, CSI sent a certified letter advising Family Guardian of the terms of their sales agreement, and set forth CSI's position in the event of a breach. CSI informed Family Guardian that if the sale of the computer was not resolved by May 25, 1990, CSI would "take immediate steps to resell the Amdahl 5880 to another party and we will charge Family Guardian Life Insurance Company for all damages which we have incurred because of Family Guardian's repudiation and breach of the Sales Agreement." Family Guardian contends that this

letter did not constitute "reasonable notice" because it was sent before the breach and was merely a declaration of CSI's rights in the event that Family Guardian breached the contract.

In support of this argument Family Guardian cites *Benton–Lincoln Credit Service, Inc. v. Giffin*, 48 Or.App. 559, 617 P.2d 662 (1980). In that case, the secured party repossessed the debtor's pickup truck, and sent a letter advising the debtor of the many remedies available to the secured party, including the right to resell the truck if the balance was not paid. *Id.*, 617 P.2d at 663. The court held that this notice did not sufficiently inform the debtor of the secured party's intentions concerning the disposition of the truck, and, therefore, did not meet the statutory notice requirements. *Id.*, 617 P.2d at 665.

We do not consider *Benton–Lincoln* to be of any assistance. Unlike the letter in that case, CSI's letter on May 14, 1990, clearly expressed their intentions that if Family Guardian breached the contract, they would resell the computer, and look to Family Guardian for any deficiency. This letter made explicit CSI's intentions and amply notified Family Guardian. The letter provided Family Guardian with more than an adequate amount of time to protect its rights and minimize any deficiencies in its position. Therefore, the letter of May 14 constituted "reasonable notice", and directly complied with § 400.2–706(3).

■ Family Guardian also attacks the June 1 letter sent by CSI claiming it did not conform to the notice requirements in the sales agreement, and was not "reasonable notice". This letter, sent via facsimile, provides in pertinent part:

Please consider this letter to be formal notice that CSI intends to resell the Amdahl 5880, ... within the next ten (10) business days for the best offer we receive. As you know, we consider Family Guard-

---

1. The record actually indicates that four letters were sent by CSI advising Family Guardian of their intention to resell the computer and look to Family Guardian for any deficiency. However, the June 14, 1990 letter was received by Family Guardian after the computer was sold to a third party. CSI does not contend that this letter constituted reasonable notice but CSI does argue that its letter dated May 17, 1990, mentioned its intention to resell the computer. Nevertheless, CSI has not furnished us with a copy of that letter, so we will not consider it in our review since we cannot ascertain its contents.

ian to be liable for the difference between the contract price and the sale price ...

■ Family Guardian argues that CSI did not comply with the contracted method of notice, and that this failure bars recovery. The parties had specified in their sales agreement that all notices should be in writing and sent by registered or certified mail. The June 1 letter did not strictly adhere to the notice requirement agreed by the parties in their contract. However, a party's performance under a contract is substantial if the deviation from the contract is slight, and the other party receives substantially the same benefit it would have from literal performance. *Gundaker v. Templer*, 560 S.W.2d 306, 309 (Mo.App.1977). Here, Family Guardian does not dispute that it received the fax transmission advising it of CSI's intentions to resell the computer in the event of a breach. Although CSI's method of notice was not in literal conformity with the agreement, its deviation was slight, and the method of notice served the purpose of notifying Family Guardian of CSI's intention to resell the computer.

■ Family Guardian also complains that the portion of the June 1 letter stating that CSI intends to resell the computer "within the next ten (10) days" is not "reasonable" because this could mean the next business day, and one day's notice cannot be considered "reasonable". In support of its theory that any notice period qualified by "within" is tantamount to no notice at all, Family Guardian cites *Bagel Break Bakery, Inc. v. Bagelman's Inc.*, 431 So.2d 676, 677 (Fla.Dist.Ct. App.1983). In that case involving Article 9, the secured party's notice of resale was given within a few days of the sale and did not provide the debtor with an adequate opportunity to take the necessary steps to protect its interests in the secured goods.

In the present case Family Guardian was not surprised by the June 1 notice that CSI intended to sell the computer "within the next ten days." Family Guardian was sufficiently apprised of CSI's intentions two weeks earlier. Upon review of the transcript, it is clear that Family Guardian had no intention of purchasing the computer at any point after it initially refused delivery.

In fact, the sale had been vetoed by its parent company in favor of setting up the computers in another region. Furthermore, Family Guardian did not contact CSI and request that CSI hold the computer for it or work out any kind of a deal where the transaction could have gone through. Family Guardian's only concern seemed to be recovery of the $45,800.00 it had paid as a downpayment, and would forfeit as a result of the breach. Since the "within" language of the June 1 letter did not appear to cause Family Guardian to act, or not act, in any particular fashion, the letter constituted reasonable notice and sufficiently communicated to Family Guardian CSI's intent to resell the computer. Point denied.

■ Family Guardian's third point contends that the trial court erred in submitting Instruction No. 5 to the jury. This instruction provides: "If defendant breached a material covenant in the parties' Sales Agreement dated March 16, 1990, then plaintiff is excused from further performance of the Sales Agreement's terms." Family Guardian argues in its brief that this instruction was an abstract statement of law which misled the jury into believing CSI did not have to comply with the notice provisions of the sales agreement.

■ Family Guardian did not properly preserve this point for our review. Specific objections to instructions must be made during trial, or set forth in the motion for new trial, in order to properly preserve the error for appellate review. *Burnett v. Thrifty Imports, Inc.*, 773 S.W.2d 508, 512 (Mo.App.1989); Rule 78.07; *see also* Rule 70.03. Family Guardian objected to Instruction No. 5 at trial. However, upon our careful review of the transcript, we are unable to discern the grounds upon which Family Guardian based its objection; therefore, we treat it as a general objection. Then, in Family Guardian's motion for new trial, it merely assigned error to the instruction, and did not include a specific objection. Family Guardian's failure to specifically object to jury instructions, either at trial or in its motion for new trial, deprived the trial court of the opportunity to correct any errors in

the instruction, and will not be countenanced on appeal. *Ideker, Inc. v. Missouri State Highway Comm'n,* 654 S.W.2d 617, 623–624 (Mo.App.1983). Therefore, we gratuitously review for plain error.

Plain error review is available when manifest injustice or a miscarriage of justice occurs. Rule 84.13(c). Examination of the record for plain error fails to reveal any manifest injustice or miscarriage of justice. The point is denied.

Family Guardian's fourth and final point charges error to the trial court for awarding CSI both $31,973.81 in interest due on Family Guardian's remaining account balance, and $25,257.73 in attorney's fees. The sales agreement provided CSI with these remedies in the event Family Guardian breached the contract. · The parties themselves had stipulated that in the event of a jury verdict for CSI, the court should make the interest and attorney's fees determination.

■ Family Guardian complains that the late charge provision in the sales agreement calling for interest payments is ambiguous and susceptible to more than one interpretation. This section provides:

> Buyer shall pay on demand a late charge on all amounts due under this Agreement which remain unpaid after they are due at five percentage points above the then predominate [sic] prime rate of interest among principal New York banks or the highest rate permitted by law whichever is lower.

Family Guardian maintains that this clause can be interpreted to cover situations where a buyer either accepts the goods and then defaults on its payment obligations, or a situation like the case at bar where the buyer breaches by refusing delivery. Family Guardian argues that the court should construe this contract term in accordance with the former scenario because, to the "extent a section is susceptible to two interpretations, it should be construed against the drafter." *Engel v. Cord Moving & Storage Co.,* 313 S.W.2d 173, 176 (Mo.App.1958). However, "an essential part of this rule is that the

conduct must be reasonably and fairly susceptible to different constructions before it can be held to be ambiguous." *Id.*

■ In our view, the language of the late charge provision in the sales agreement is perfectly clear. A late charge or interest payment is required on all *unpaid* account balances. During the time between the breach and the jury award, Family Guardian's account balance remained unpaid. At the time of the breach, Family Guardian's unpaid balance was $169,200.00.[2] This amount, the principle, was used to determine the interest until the resale of the computer. After the resale of the computer for $60,-000.00, Family Guardian's unpaid balance was reduced by this amount to $109,200.00. The interest was determined on this amount. There was no ambiguity in the clause, and the court simply used the applicable interest rate with the current principal balance owed in determining the interest charges. The parties to this contract were perfectly free to contract as they wished, and appellate courts should not resort to construing a contract which calls for no construction. *Slusher v. Mid–America Broadcasting,* 811 S.W.2d 443, 447 (Mo.App.1991).

■ Family Guardian also complains that the late charge provision is penal because it was assessed in addition to the damage award. We disagree. We have been unable to find any cases in which the rate of interest on past due payments was declared a penalty. Moreover, the damage awarded by the jury was simply the difference between what CSI was entitled to according to the terms of the contract, and what CSI actually received because of the breach. Through no fault of its own, CSI was denied use of this money for over two years. We do not believe that a non-breaching party should be forced to absorb the financial loss caused by not having the use of the money it was entitled to, simply because the other party refused to live up to its contractual obligations. We place this risk on the defaulting party. Family Guardian initiated the breach; therefore,

---

**2.** This amount was computed as follows: $229,-000.00 less downpayment of $45,800.00, less saved installation and transportation costs of $14,000.00.

it shall be held to the terms to which it freely contracted.

In its final salvo under this same point, Family Guardian argues that both the award of interest and attorney's fees were improper because CSI breached the sales agreement by not complying with the terms relating to notice. Family Guardian takes the position that a party who breaches a contract may not avail itself of the benefits of the same contract. While this assertion is true, Family Guardian's reliance on it is misguided. As has been discussed thoroughly throughout this opinion, the letters sent by CSI to Family Guardian both literally and substantially complied with the notice requirements in the sales agreement, and sufficiently apprised Family Guardian of CSI's intention to resell the computer, and to hold Family Guardian for any deficiency. We deny Family Guardian's fourth point in all respects.

Judgment affirmed.

GARY M. GAERTNER, C.J., and SMITH, J., concur.